Argued and submitted March 10, 1995, reversed and remanded March 13, petition for review denied July 2, 1996 (323 Or 535)

In the Matter of the Compensation of
Ramon M. Marin, Claimant.

SAIF CORPORATION
and Oregon Garden Products,
*Petitioners,*

*v.*

Ramon M. MARIN,
*Respondent.*

(WCB 92-07796; CA A85619)

913 P2d 336

Michael O. Whitty, Special Assistant Attorney General, argued the cause for petitioners. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Bradley P. Avakian argued the cause for respondent. On the brief were Lynn-Marie Crider and James Francesconi.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

■      This case is before us for the second time. In *SAIF v. Marin*, 128 Or App 161, 875 P2d 529 (1994), we reversed an order of the Workers' Compensation Board (Board) that held that claimant's injury was compensable. We remanded the case to the Board for reconsideration in the light of *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 867 P2d 1373 (1994), which was decided after the Board had initially decided the case. In particular, we remanded for the Board to consider whether claimant's injury "arose out of" his employment. ORS 656.005(7)(a). On remand, the Board held that claimant's injury did arise out of his employment and, thus, that claimant's injury was compensable.[1] SAIF seeks review of that order, and we reverse.

■      We quote the material facts, which are undisputed, from the Board's order:

> "On January 8, 1992, after completing his shift with his employer, claimant walked to his truck, which was parked in a lot leased by the employer for use by its employees and customers. Claimant could not start his truck, because the battery was dead. He waited approximately half an hour for other employees to get off work so that he could ask one of them for a jump start.
>
> "A supervisor's car was parked near claimant's truck. At claimant's request, the supervisor agreed to give claimant a jump start. The jumper cables were not long enough to connect the two vehicles, so the supervisor's wife moved the supervisor's car closer to claimant's truck. In the process of that move, the supervisor's car struck a flower box, which in turn was pushed into claimant, squeezing him against his truck and resulting in injuries to his legs, knees and right ankle. The employer had built the flower box that struck claimant."

In concluding that claimant's injury arose out of his employment, the majority of the Board reasoned as follows:

---

[1] The "in the course of employment" component of the unitary work connection test is not at issue here. That element was satisfied by the "parking lot rule," which provides that injuries that occur on the employer's premises while the claimant is proceeding to or from work are "in the course of employment." *See Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366-67, 867 P2d 1373 (1994).

"[T]o establish that an injury 'arose out of' employment, the claimant must prove that there is some causal connection between the injury and his or her employment. *Norpac Foods, Inc. v. Gilmore, supra,* 318 Or at 368-69. In a 'parking lot' case, that causal connection exists when the claimant's injury was brought about by a condition or hazard associated with premises over which the employer exercises some control. *See Montgomery Ward v. Malinen,* 71 Or App 457 (1984) (fall on icy pavement employer had legal duty to maintain) * * *. In other words, claimant must prove that his employment conditions put him in a position to be injured. *See Henderson v. S.D. Deacon Corporation,* 127 Or App 333 (1994).

"At hearing, the parties stipulated that the employer had built the flower box that was pushed into claimant. Accordingly, we conclude that the flower box was a hazard associated with the parking lot over which the employer exercised control. * * * Because claimant was injured when the flower box was moved out of place, thus trapping claimant in between the box and his truck on the employer's parking lot, we conclude that claimant's employment conditions put him in a position to be injured. *See Henderson v. S.D. Deacon Corporation, supra.* Therefore, we conclude that the causal connection between claimant's injuries and his employment is sufficient to establish that his injuries 'arose out of' his employment."

Board Chair Neidig dissented, arguing that the flower box, by itself, was not a "hazard." She concluded that the flower box presented a risk of injury only when claimant needed to jump start his car, an activity "entirely attributable to claimant's personal needs." Because she believed that the causal connection between claimant's injury and his employment was "tenuous at best," she concluded that his injuries did not arise out of his employment and, thus, were not compensable.

SAIF asserts that the Board erred in concluding that claimant's injury arose out of his employment. SAIF first argues that the Board improperly focused on the employer's construction of the flower box that was pushed into claimant. As set forth above, the Board concluded that claimant's injury was causally connected to his employment because: (1) the employer built the flower box; (2) the flower box was a "hazard" associated with the employer-

controlled parking lot; and (3) claimant was injured by the flower box.

SAIF argues that the flower box, in its static state, was not a hazard and that the Board should have focused on the "whole injury event" to determine whether it was connected to claimant's employment. We agree for a number of reasons. First, there is no evidence that the flower box, by itself, presented any risk of harm. As Board Chair Neidig pointed out in her dissent, the flower box presented a risk of harm only when it was struck by claimant's supervisor's wife, who was trying to help claimant jump start his car:

> "Had there been no outside force dislodging the flower box or had the box collapsed while claimant was leaning on the structure, I would be more inclined to find a sufficient causal connection between claimant's injuries and his employment. Such circumstances would lend credence to a conclusion that the flower box constituted a 'hazard' on the employer's parking lot. However, because the falling flower box was triggered by an 'outside force' and since the activity which prompted that 'force' had no connection to claimant's employment, I cannot share my fellow members' conclusion that claimant's injuries 'arose out of' his employment."

■ Second, the Board improperly focused only on the fact that claimant was injured by an instrumentality over which the employer had control. Instead, the Board should have considered whether the totality of the events that gave rise to claimant's injury was causally related to his employment. *See Kaiel v. Cultural Homestay Institute*, 129 Or App 471, 480, 879 P2d 1319, *rev den* 320 Or 453 (1994); *Henderson v. S.D. Deacon Corp.*, 127 Or App 333, 874 P2d 76 (1994).

■ In *Henderson, Id.* at 338, we set forth the proper inquiry:

> "In assessing whether there is a sufficient causal link between a claimant's injury and employment, the connection between the claimant's work and what happened must be evaluated. Part of that inquiry is whether what occurred was an anticipated risk of employment. As explained by Larson [Larson, 1 *Workmen's Compensation Law*, § 7.00, 3-12 (1995)]:

" 'All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks — *i.e.*, risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally non-compensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance.' "

Accordingly, we must first categorize the nature of the risk of harm that befell claimant. SAIF argues that the risk of being injured by the planter box was personal to claimant, because he was injured while attempting to jump start his car. Claimant argues that the risk of injury was employment-related, because his injury occurred on the employer's premises during an activity in which his supervisor assisted. We conclude that neither SAIF nor claimant correctly categorize the risk of injury here.

Larson describes personal risks as

"origins of harm so clearly personal that, even if they take effect while the employee is on the job, they could not possibly be attributed to the employment. If the time has come for the employee to die a natural death, or to expire from the effects of some disease or internal weakness of which he would as promptly expired whether he had been working or not, the fact that his demise takes place in an employment setting rather than at home does not, of course, make the death compensable. Or if the employee has a mortal personal enemy who has sworn to seek him out wherever he may be, and if this enemy happens to find and murder the employee while the latter is at work, the employment cannot be said to have had any causal relation to the death. The same is true if the employee, for reasons of his own, carries a bomb in his bosom * * * and if the bomb goes off during business hours." Larson, 1 *Workmen's Compensation Law*, § 7.20, 3-13 (1995) (footnotes omitted).

According to Larson, "personal risks" are risks of injury that arise from idiopathic conditions that the claimant may

have, from personal confrontations, or from instrumentalities personal to the claimant. There is no evidence here that claimant was predisposed to injure his leg, that his supervisor's wife injured him for personal reasons, or that claimant owned the flower box or the car that ran into it. Thus, the risk of injury was not personal to claimant.

Conversely, Larson describes employment-related risks of injury as

> "all the obvious kinds of injury that one thinks of at once as industrial injury. All the things that can go wrong around a modern factory, mill, mine, transportation system, or construction project — machinery breaking, objects falling, explosives exploding, tractors tipping, fingers getting caught in gears, excavations caving in, and so on * * *. Equally obviously associated with employment, however, are also the occupational diseases, which as the very name implies, are produced by the particular substances or conditions inherent in the environment of the employment." *Id.* at § 7.10, 3-12.

As contemplated by Larson, employment-related risks are those that are inherent to the claimant's job and that either produce injury while the claimant is engaged in his or her usual employment or that became manifest later in the form of occupational diseases. There is no evidence here that claimant's job involved working around the flower box. Nor does claimant contend that he was working at the time of the injury. The fact that the persons helping claimant were his supervisor and his wife does not make what occurred an employment-related risk, because there is no indication that the supervisor was acting in a supervisory role. Thus, the risk of injury was not directly related to claimant's employment.

Instead, the risk of claimant being injured by the flower box while jump starting his car in the parking lot is more properly denominated a neutral risk, a "risk[] of neither distinctly employment nor distinctly personal character."[2] Accordingly, claimant's injury is compensable only

---

[2] Examples of other neutral risks include:

"A man hard at work in the middle of a factory yard may be hit by a stray bullet out of nowhere, bit by a mad dog, stabbed by a lunatic running amuck, struck by lightening, thrown down by a hurricane, killed by an enemy bomb,

if his work conditions caused him to be in a position to be injured by the flower box. *Kaiel*, 129 Or App at 480; *Henderson*, 127 Or App at 338-39.

We conclude that claimant's work conditions did not cause him to be in a position to be injured by the flower box. It is undisputed that the employer leased the parking lot in which claimant was injured for use by customers and employees. Where an employee, like claimant, drives to work, it is generally necessary to walk to and from the parking lot while entering and leaving work. Thus, in a general sense, walking through the parking lot to his car on the way home after work could be viewed as a condition of claimant's employment. We might conclude that his conditions of employment caused him to be in a position to be injured by the flower box if the flower box had tipped over on him or if it had been pushed into him by another vehicle as he was walking to or from work through the parking lot. Claimant's injury here, however, was not precipitated simply by his walking through the parking lot on the way to his car after work. Claimant's efforts to jump start his car and the circumstances that followed more directly caused him to be in a position to be injured by the flower box. We conclude that those activities were sufficiently removed from his normal ingress and egress to and from work as to break the causal connection between his normal conditions of employment and his injury. Thus, the Board erred in holding that claimant's injury arose from his employment.

Reversed and remanded.

---

injured by a piece of tin blown from someone's roof, shot by a child playing with an air rifle, murdered as a result of mistaken identity, felled by debris from a distant explosion, or blinded by a flying beetle. Another kind of neutral-risk case is that in which the cause itself, or the character of the cause, is simply unknown." Larson, 1 *Workmen's Compensation Law*, § 7.30, 3-13 (1995).