Argued and submitted August 7, 1996, affirmed March 19, 1997

In the Matter of the Compensation of
James D. Johnson, Claimant.

James D. JOHNSON,
*Petitioner,*

*v.*

BEAVER COACHES, INC.,
and Liberty Northwest Insurance Corporation,
*Respondents.*

(WCB 94-05835; CA A92230)

935 P2d 430

Janet H. Breyer argued the cause for petitioner. With her on the brief was Philip H. Garrow.

Jerald P. Keene argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

PER CURIAM

Armstrong, J., dissenting.

## PER CURIAM

Claimant seeks review of an order of the Workers' Compensation Board that upheld the denial of his left knee injury claim on the grounds that he failed to carry his burden of proof by showing that his injury "arose out of" his employment. We affirm.

Claimant worked on a production assembly line. On the day of his injury, claimant retrieved a part from the parts bin and then stopped to speak with a coworker about a work-related subject. When claimant took a step to return to his task, his left knee buckled and audibly "popped." The shop floor is level and there was no evidence that claimant slipped, twisted, or tripped over anything on the floor. Subsequently, claimant was diagnosed with a left medial meniscus tear.

The Board concluded that claimant failed to show that his left-knee condition arose out of his employment because he had failed to establish any causal connection between the injury and his work activities other than the mere fact that the step occurred at work. *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 867 P2d 1373 (1994). That conclusion is supported by substantial evidence.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority holds that there is substantial evidence to support the Board's conclusion that "claimant failed to show that his left-knee condition arose out of his employment." 147 Or App at 235. Because the Board did not apply the proper analysis in reaching its conclusion, I respectfully dissent from the majority's decision.

According to ORS 656.005(7)(a), a " 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services." The "requirement that the injury 'arise out of' the employment tests the causal connection between the injury and the employment." *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). " 'The [claimant] must show a causal link between the occurrence of the injury and a risk

connected with his or her employment.' " *Id.* at 368-69 (citation omitted).

Claimant was injured when, after standing still, he took a step. Thus, the risk causing claimant's injury was taking steps, *i.e.*, walking. As a preliminary matter, then, in determining whether claimant's injury arose out of his employment, the Board had to assess what type of risk walking is in those circumstances. The Board failed to do that. As a result, the Board could not properly determine whether claimant had established that his left-knee condition arose out of his employment.

In *Henderson v. S.D. Deacon Corp.*, 127 Or App 333, 338, 874 P2d 76 (1994), we quoted Professor Larson on the identification of risk and stated:

> " 'All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and neutral risks—*i.e.*, risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance.' "

(Quoting 1 Arthur Larson, *Workmen's Compensation Law* § 7.00, at 3-14 (1996)).

As we said in *SAIF v. Marin*, 139 Or App 518, 524, 913 P2d 336 (1995), *rev den* 323 Or 535 (1996):

> "[E]mployment-related risks are those that are inherent to the claimant's job and that either produce injury while the claimant is engaged in his or her usual employment or that became manifest later in the form of occupational diseases."

" '[P]ersonal risks' are risks of injury that arise from idiopathic conditions that the claimant may have[.]" *Id.* at 523-24. They are "origins of harm so clearly personal that, even if they take effect while the employee is on the job, they could not possibly be attributed to the employment." Larson,

1 *Workmen's Compensation Law* § 7.20, at 3-15 (1996). Neutral risks are neither distinctly employment related nor distinctly personal in character. If walking, under these circumstances, is categorized as a neutral risk, then "claimant's injury is compensable only if his work conditions caused him to be in a position to be injured" by the neutral risk. *Marin*, 139 Or App at 524-25.

Because the Board failed to determine whether the risk that led to claimant's injury was employment related, neutral or personal, it could not properly determine whether claimant's injury arose out of his employment. If, applying the proper legal analysis, the Board concludes that the step was part of a risk connected to claimant's employment, either an employment-related risk or a neutral risk that his employment put him in a position to be injured by, then claimant's injury is compensable if he demonstrates that his torn medial meniscus was caused by the step that he took at work.

The order of the Board should be reversed and remanded so that the Board can apply the proper legal analysis to determine whether claimant's injury "arose out of his" employment. The majority errs in concluding otherwise.