Argued and submitted August 18, 2003, affirmed February 11, 2004

In the Matter of the Compensation of
Glenna M. Stuart, Claimant.

HEARTHSTONE MANOR,
*Petitioner,*

*v.*

Glenna M. STUART,
*Respondent.*

01-07907; A119321

84 P3d 208

Benjamin M. Bloom argued the cause for petitioner. With him on the briefs was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Arthur W. Stevens III argued the cause for respondent. With him on the brief was Black, Chapman, Webber, Stevens & Petersen.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Claimant injured her knee when she walked into a concrete ashtray while returning to work from lunch. The Workers' Compensation Board (the board) concluded that the injury was compensable. Employer seeks judicial review, contending that claimant's injury was not sufficiently work related to justify the board's conclusion. We agree with the board and affirm.

■     Both parties accept the facts as stated by the board:

"Claimant injured her knees shortly before 11 a.m. on August 23, 2001, when she accidentally walked into a three or four foot high concrete cigarette receptacle while returning from a half-hour 'lunch' break. At the time, claimant was returning with a friend from the employer's cafeteria to the building in which she worked. The injury occurred while claimant was distracted by looking at trees as she and her friend were walking on a slanted walkway on the employer's premises leading into the building in which claimant worked. The concrete ashtray was positioned about midway down the slanted sidewalk next to shrubs.

"Claimant was free to use her lunch-break time as she pleased. On days that claimant was scheduled to work all day she was not normally paid for her lunch break. On the day of injury, claimant was scheduled to work the full day but only did so until 11 a.m. because of her injury. The record indicates that claimant was paid until 11 a.m."

The parties agree on the basic legal principles that govern the outcome of this case. First, to be compensable, an injury must "arise[ ] out of and in the course of employment," ORS 656.005(7)(a), a pair of requirements often referred to as the "unitary 'work-connection' inquiry." *Robinson v. Nabisco, Inc.*, 331 Or 178, 185, 11 P3d 1286 (2000). Second, the injury must not result from "any recreational or social activities primarily for the worker's personal pleasure," ORS 656.007(7)(b)(B). The requirements are cumulative; failure to meet either renders the injury noncompensable. *Andrews v. Tektronix, Inc.*, 323 Or 154, 160 n 1, 915 P2d 972 (1996).

In the present case, the board concluded that claimant's injury was compensable because it met the unitary

work-connection test and it did not result from a recreational or social activity. On judicial review, employer challenges both of those conclusions. We begin with the work-connection question.

The work-connection test of ORS 656.005(7)(a) contains two parts, as indicated by its text: To be compensable, the injury must occur "in the course of" employment, and it must "arise out of" employment. Each part of the test imposes a different requirement. To occur in the course of employment, "the time, place, and circumstances of the injury [must] justify connecting the injury to the employment." *Robinson*, 331 Or at 186. To arise out of employment, "some causal link" must exist between the injury and the employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996). That link exists if employment exposes the worker to some risk from which the injury originates. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997). To meet the unitary work-connection test, an injury must, to some degree, meet both parts, *Krushwitz,* 323 Or at 531, but "the work-connection test may be satisfied if the factors supporting one prong are minimal while the factors supporting the other prong are many." *Id.* (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983)). Despite this web of rules, however, the Supreme Court has cautioned:

> "[A]lthough the 'arising out of' and 'in the course of' prongs provide guidance, the unitary work-connection test does not supply a mechanical formula for determining whether an injury is compensable. We evaluate those factors in each case to determine whether the circumstances of a claimant's injuries are sufficiently connected to employment to be compensable."

*Robinson*, 331 Or at 185.

Applying these legal precepts to the facts of this case, we conclude that the connection between claimant's injury and her employment is sufficient to establish compensability.

We begin with the question whether the injury occurred "in the course" of employment. The board reasoned as follows:

"[W]e observe that, while claimant was not performing any work activities when injured, she was on the employer's premises on the customary route back into the building in which she worked. Although the ALJ reasoned that the lunch period was intended to be unpaid because claimant, but for the injury, would have worked all day (and normally would not have been paid for the lunch break), the fact remains that claimant was paid during the period in which she was injured. Under such circumstances, we conclude that the 'course of employment' element was satisfied to a significant degree."

Central to the board's reasoning is the conclusion that "claimant was paid during the period in which she was injured." Although that fact is true, we take a different view of its significance. We believe that the more important fact is that, *at the time she was injured,* claimant was on her lunch break and therefore not "on the clock." That fact, more than the fact that employer ultimately paid her for the time because she did not complete her shift, determines the relationship between the activity and claimant's duties.

■ ■ Because claimant was not "on the clock" when injured, but rather was on employer's premises while returning to work from a lunch break, the course of employment inquiry falls within the so-called "parking lot" rule. Injuries sustained while an employee is going to and coming from the employee's regular place of employment are not generally considered to have occurred in the course of employment. *Norpac Foods, Inc. v. Gilmore,* 318 Or 363, 366, 867 P2d 1373 (1994). One exception to the "going and coming" rule is the "parking lot" rule: An injury sustained on an employer's premises while an employee is proceeding to or from work is considered to have occurred " 'in the course of employment.' " *Id.* at 367. In order for the parking lot exception to apply, the employer must exercise some measure of control over the place where the injury is sustained. *Cope v. West American Ins. Co.,* 309 Or 232, 238-39, 785 P2d 1050 (1990) ("Employer control over the premises is the rationale supporting the parking-lot exception."). The parking lot exception has been broadened to any area over which an employer exercises, or could exercise, control. *McTaggart v. Time Warner Cable,* 170 Or App 491, 496, 16 P3d 1154 (2000), *rev den,* 321 Or 633

(2001) ("[I]t is possible to satisfy the 'occurring in the course of employment' prong when the employer has *some* control over the area where the injury is sustained, even if the area is not a parking lot." (Emphasis in original.)). In this case, it is undisputed that the sidewalk upon which claimant was injured was located on employer's campus and was controlled by her employer. There is no reason to distinguish a sidewalk connecting two of employer's buildings from an employer-owned parking lot. Nor is there any reason to distinguish an employee arriving or departing from work at the beginning or end of the work day from an employee arriving or departing from work at the beginning or end of lunch. We therefore agree with the board's conclusion that the injury occurred in the course of employment.

As noted, an injury "arises out of" employment if a claimant can establish "some causal link" between the employment and the injury. Claimant here has done so.

The board analyzed the "arising out of" question as follows:

> "It is true that claimant was not performing work while injured. Nevertheless, claimant struck a three or four-foot concrete cigarette receptacle placed on the walkway leading to the entrance of the building normally used by claimant. In light of these circumstances, we conclude that the cigarette receptacle was a hazard on the employer's premises over which it had control. Accordingly, we conclude that claimant's injury (striking the concrete receptacle on the employer's premises) occurred as a result of a risk connected to her employment. Thus, the injury did arise out of her employment."

In deciding whether this analysis is correct, *SAIF v. Marin*, 139 Or App 518, 522, 913 P2d 336, *rev den*, 323 Or 535 (1996), is instructive. In that case, the claimant could not start his truck after finishing his shift. The truck was parked in an employer-furnished lot near an employer-built flower box. At the claimant's request, his supervisor's wife attempted to move the supervisor's truck into a position from which the two trucks could be connected by jumper cables, but in doing so, she ran into the flower box, tipping it onto the claimant and inflicting an injury. *Id.* at 520. The board reasoned that,

in a "parking lot" case, the causal connection between employment and injury occurred

> " 'when the claimant's injury was brought about by a condition or hazard associated with the premises over which the employer exercises some control. * * * In other words, claimant must prove that his employment conditions put him in a position to be injured.' "

*Id.* at 521. We rejected that conclusion for two reasons. First, we noted that the flower box, "by itself, presented [no] risk of harm." *Id.* at 522. It only became an agent of injury when acted upon by a force that was unrelated to the claimant's employment. The same cannot be said for the cigarette receptacle in the present case; it was an object that claimant would predictably encounter while returning to work from the employer-controlled cafeteria, on an employer-controlled path. No outside force unrelated to claimant's employment acted upon the ashtray so as to put it in claimant's way.

The second reason why we rejected the board's conclusion in *Marin* was that the board focused too narrowly on the fact that the employer controlled the flower box and parking lot; "[i]nstead, the board should have considered whether the totality of the events that gave rise to claimant's injury was causally related to his employment." *Id.* We concluded that the cause of the claimant's injury was neither a personal risk (as would be, for example, a heart condition unrelated to work conditions that caused a heart attack while the claimant happened to be at work) nor an employment-related risk (as would be, for example, an excavation caving in or a machine catching an employee's fingers), but rather, a "neutral risk," that is, one " 'of neither distinctly employment nor distinctly personal character.' " *Id.* at 524 (citing Larson, 1 *Workers' Compensation Law* 7.30, 3-13 (1995)). We held that, in determining whether a neutral risk has a causal connection to employment, the proper inquiry was whether the claimant's work conditions "caused him to be in a position to be injured by the flower box." *Marin*, 139 Or App at 524-25. Applying that test, we concluded:

> "[C]laimant's work conditions did not cause him to be in a position to be injured by the flower box. It is undisputed that the employer leased the parking lot in which claimant

was injured for use by customers and employees. Where an employee, like claimant, drives to work, it is generally necessary to walk to and from the parking lot while entering and leaving work. Thus, in a general sense, walking through the parking lot to his car on the way home after work could be viewed as a condition of claimant's employment. We might conclude that his conditions of employment caused him to be in a position to be injured by the flower box if the flower box had tipped over on him or if it had been pushed into him by another vehicle as he was walking to or from work through the parking lot. *Claimant's injury here, however, was not precipitated simply by his walking through the parking lot on the way to his car after work.* Claimant's efforts to jump start his car and the circumstances that followed more directly caused him to be in a position to be injured by the flower box. We conclude that those activities were sufficiently removed from his normal ingress and egress to and from work as to break the causal connection between his normal conditions of employment and his injury. Thus, the Board erred in holding that claimant's injury arose from his employment."

*Id.* at 525 (emphasis added). In the present case, we agree with the board that claimant's injury *was* precipitated by walking along employer's path on her way back to work after lunch and that in doing so she was engaging in "normal ingress" to work. Thus, as distinct from *Marin*, in the present case, nothing broke the causal connection between claimant's conditions of employment and her injury. Her injury arose out of her employment as we have construed that phrase, and for that reason it met both aspects of the unitary work-connection test.

Employer also contends that claimant's injury is not compensable because it resulted from a "recreational or social activit[y] primarily for the worker's personal pleasure." ORS 656.007(7)(b)(B). We disagree. Under the "parking lot rule," walking between the employer-controlled cafeteria to the workplace is an activity related to claimant's work; substantial evidence supports the board's conclusion that observing the surrounding landscaping while doing so did not convert her return to work into an activity that was "primarily" recreational. Even if she derived pleasure from her observations, "that pleasure was merely incidental to

[her] primary activity." *Liberty Northwest Ins. Corp. v. Nichols*, 186 Or App 664, 671, 64 P2d 1152 (2003).

Affirmed.