Argued and submitted August 1, 2019, reversed and remanded April 14, 2021

In the Matter of the Compensation of
Ashley Bruntz-Ferguson, Claimant.

Ashley BRUNTZ-FERGUSON,
*Petitioner,*

*v.*

LIBERTY MUTUAL INSURANCE
and IBM Corp - International Business Machines,
*Respondents.*

Workers' Compensation Board
1700449; A166216

485 P3d 903

Claimant seeks judicial review of an order of the Workers' Compensation Board (the board) affirming an order of an administrative law judge upholding employer's denial of her injury claim. Claimant was injured after slipping and falling on snow and ice while walking to work on an area leased to employer. The parties agree that claimant's injury would be compensable if it "arose out of and in the course of" her employment. The threshold issue is whether employer had sufficient control over the area where the injury occurred such that the "parking lot" exception to the "coming and going rule" would apply. *Held*: The board's order upholding the denial of compensability was without substantial reason. Regarding the "in the course of" prong, employer had sufficient control over the area of injury such that the "parking lot" exception applied, and, therefore, claimant's injury occurred "in the course of" her employment. Further, claimant's injury "arose out of" her employment because claimant's work environment included the area where she was injured and there were no conditions that would break the causal connection between a condition of claimant's employment and her injury.

Reversed and remanded.

Julene M. Quinn argued the cause and filed the briefs for petitioner.

Laura A. Newsom argued the cause for respondents. On the brief was Camilla Thurmond.

Before Lagesen, Presiding Judge, and DeVore, Judge, and Powers, Judge.

POWERS, J.

Reversed and remanded.

## POWERS, J.

Claimant seeks judicial review of an order of the Workers' Compensation Board (the board) affirming an order of an administrative law judge (ALJ) upholding employer's denial of her injury claim. The threshold issue is whether employer had sufficient control over the area where the injury occurred such that the "parking lot" exception to the "coming and going rule" would apply. We conclude that employer had sufficient control over the area of injury such that claimant's injury occurred "in the course of" her employment. We also conclude that claimant's injury "arose out of" her employment. Accordingly, we reverse and remand the board's order.

We review the board's order upholding the denial of claimant's claim for errors of law and substantial evidence. ORS 656.298(7); ORS 183.482(7), (8). ORS 183.482(8)(c) provides that substantial evidence "exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." In reviewing for substantial evidence, we also review the board's order for substantial reason, which requires us to determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based. *NAES Corp. v. SCI 3.2, Inc.*, 303 Or App 684, 692, 465 P3d 246, *rev den*, 366 Or 826 (2020).

We begin with the legal context for this dispute. When a person is injured at work, that injury is compensable if it "aris[es] out of and in the course of employment." ORS 656.005(7)(a). Rather than creating two distinct tests, each of which must be satisfied, Oregon has adopted a unitary approach—known as the work-connection test—where "arising out of" and "in the course of" are two prongs of a single inquiry that must determine "whether the relationship between the injury and the employment is sufficient that the injury should be compensable." *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). Under the unitary work-connection test, an injury must—to some degree—meet both prongs and the test "may be satisfied

if the factors supporting one prong are minimal while the factors supporting the other prong are many." *Compton v. SAIF*, 195 Or App 329, 332, 97 P3d 669, *rev den*, 337 Or 669 (2004) (internal quotation marks and citation omitted). Each prong of the work-connection test measures the relationship between the injury and the employment in a different manner. The "arising out of" employment prong examines the "causal connection between the injury and the employment," whereas the "in the course of" employment prong assesses "the time, place, and circumstances of the injury." *Norpac Foods, Inc.*, 318 Or at 366. Both elements or prongs must be evaluated, because neither one is dispositive. As the Supreme Court has explained,

> "although the 'arising out of' and 'in the course of' prongs provide guidance, the unitary work-connection test does not supply a mechanical formula for determining whether an injury is compensable. We evaluate those factors in each case to determine whether the circumstances of a claimant's injuries are sufficiently connected to employment to be compensable."

*Robinson v. Nabisco, Inc.*, 331 Or 178, 185, 11 P3d 1286 (2000).

Under the "in the course of" prong, "Oregon courts follow the 'going and coming rule,' which provides that injuries sustained while going to or coming from the workplace are not compensable." *Henderson v. S.D. Deacon Corp.*, 127 Or App 333, 336, 874 P2d 76 (1994). That rule applies to injuries occurring both before and after the workday, and it also applies to injuries occurring while an employee is going to or coming from a break. *Enterprise Rent-A-Car Co. of Oregon v. Frazer*, 252 Or App 726, 731, 289 P3d 277 (2012), *rev den*, 353 Or 428 (2013).

One exception to the "going and coming rule" is the "parking lot" exception. That exception applies "when an employee traveling to or from work sustains an injury 'on or near' the employer's premises." *Henderson*, 127 Or App at 336. That is, the "in the course of" prong may be satisfied if "the employer exercises some control over the place where the injury is sustained." *Id.* (internal quotation marks and citation omitted). As the Supreme Court explained:

> "Whether the requisite control is evinced by increased, employer-created hazards, or by the employer's property rights to the area where the injury is sustained, is immaterial. Some form of employer control of the area demonstrates the work-connection necessary to make the injury compensable."

*Cope v. West American Ins. Co.*, 309 Or 232, 239, 785 P2d 1050 (1990) (citations omitted).

With that context in mind, we set out the undisputed facts. Claimant worked at a call center in Salem. As claimant approached the office building for her shift beginning at 5:00 a.m., she stepped onto the curb leading to a gravel path, slipped, and fell backwards off the curb. The ground was snowy and icy on that mid-December morning. Claimant was injured from the fall.

Employer leases its office space, along with access to a "common area," and parking spaces. Under the terms of the lease, employer pays additional rent for its share of the maintenance of the common area, and employer "and its employees *** shall have the non-exclusive right and license to use the Common Area." The lease designated both the curb where claimant was injured and the gravel path as a "Common Area." Employer's facility manager testified that employer may request repairs and maintenance of the common area. The lease also provides that employer may pay additional rent for maintenance of curbs and pedestrian pathways and that that maintenance "shall be subject to [the] Landlord's sole management and control." However, under the lease, if the tenant requests maintenance and the landlord fails to timely make the necessary repairs, the tenant would be entitled to a pro-rata abatement of rent.

After claimant was injured, she filed a claim. Employer denied the claim, relying on the "going and coming" rule. Claimant requested a hearing and argued that her injury was compensable under the "parking lot" exception to the "going and coming" rule. The ALJ upheld the denial, concluding that the parking lot exception did not apply because the injury did not occur in an area controlled by employer. Therefore, the ALJ determined that claimant's

injury was not sufficiently connected to her work to make her injury compensable.

The board affirmed the ALJ's order. The board reasoned that, although

> "the employer paid for a portion of maintenance of the common areas, the landlord had 'sole discretion' regarding maintenance of the common area. Therefore, because the employer did not have a right to require maintenance, or an obligation to provide maintenance, it did not have sufficient control over the common area to create an exception to the 'going and coming' rule.
>
> "* * * * *
>
> "Accordingly, because claimant's injury occurred while she was going to her employment, and the 'parking lot' exception to the 'going and coming' rule does not apply, the injury did not occur within the course of her employment."

The board further concluded that claimant's injury did not arise out of her employment:

> "Here, the record does not establish that claimant's injury was the product of a risk connected with the nature of her work as a call center associate. She was injured before she entered the employer's premises and before starting her work shift. Moreover, there is no indication that her injury resulted from a risk to which she was exposed by her work environment."

On judicial review, claimant argues that, with respect to the "in the course of" prong, the board applied the "parking lot" exception too narrowly, and further argues that the exception includes "ingress and egress and common areas leased by the employer." Claimant asserts that the board erred in concluding that employer did not have "some control" over the area where claimant's injury occurred. Addressing the "arising out of" prong, claimant argues that the board's interpretation of the risk to which a claimant is exposed is so narrow that it would swallow the "parking lot" exception. That is, "[u]nless one's job is specifically walking to the employer's entrance, then it would never be associated with the particular job function for which the worker is hired."

Employer responds that, because the landlord had sole discretion over the maintenance of the common area, it did not have sufficient control over the common area such that claimant's injury is compensable. It further argues that "having to walk over snow and ice is not an employment risk but rather, a neutral risk," and that the weather was "an outside force unrelated to claimant's employment that put the snow and ice on the ground [that] claimant walked over to get to work."

We first address the "in the course of" prong of the unitary work-connection test. As explained below, the board's conclusion that employer did not have "some control" over the common area is without substantial reason. On this point, we find *Henderson* instructive. In that case, the "[c]laimant worked on the fourth floor of an office building that [was] leased by [her] employer." 127 Or App at 335. The claimant was required to take a one-hour unpaid lunch break and was encouraged by her employer to leave the building to do so. "She was injured when she attempted to step out of the elevator, because the elevator had stopped above the level of the first floor." *Id*. When compensability was denied, the claimant sought judicial review, challenging the board's determination that the employer could not require the landlord to maintain and repair the elevator. Agreeing with the claimant's argument, we explained that,

> "[u]nder the terms of the lease, once the landlord had received written notice from employer, and after a reasonable amount of time had passed, the landlord was required to make the requested repairs. The fact that, as a practical matter, it might be difficult to get the landlord to repair the elevator, did not eliminate employer's right to require repairs."

*Id*. at 337.

We concluded that "there was a sufficient connection between the employer and the area where the injury occurred" to satisfy the "in the course of" prong. *Id*.

Here, as in *Henderson*, the lease between employer and the landlord permitted employer to request repairs to maintain the common areas designated in the lease. Although *Henderson* involved an elevator and this case

involves a snowy or icy curb within the common area, the important inquiry when evaluating the "in the course of" prong is the degree of control; it is not whether employer, in fact, requested repairs. That is, employer in this case had the *right* to request a repair of the common area, evincing a similar degree of control as the employer in *Henderson* did. Further, although maintenance of the common area is subject to the landlord's "sole management and control," that fact does not change employer's right to request repairs. Under the terms of the lease, it is the method of maintenance that is subject to the landlord's control. It is employer's ability to request repairs that is indicative of control; it is not required that employer control the method of how those repairs are carried out to establish "some control" over the common area.

Further, in this case, employer is entitled to an abatement of rent if, after proper notice, the landlord fails to timely maintain and repair the common areas. That rent-abatement provision ensures that employer's property interest in maintaining the common area is enforced, which illustrates a degree of employer's control over that area. Therefore, we conclude that those facts, taken together, establish that employer had "some control" over the area in the parking lot where claimant was injured. Accordingly, because employer had some control over the area where claimant was injured, we conclude that the "in the course of" prong is satisfied.

We next evaluate the "arising out of" prong of the unitary work-connection test. As noted above, this prong "is satisfied only if the claimant's injury is the product of either (1) a risk connected with the nature of the work or (2) a risk to which the work environment exposed claimant." *Legacy Health System v. Noble*, 250 Or App 596, 603, 283 P3d 924, *rev den*, 353 Or 127 (2012) (internal quotation marks and citation omitted). In rejecting claimant's argument, the board's entire discussion provided:

> "Where, as here, the risk of injury is a 'neutral risk,' the injury is deemed to 'arise out of' employment if the risk of injury resulted from the nature of claimant's work or when it originated from some risk to which the work environment exposed her.

"Here, the record does not establish that claimant's injury was the product of a risk connected with the nature of her work as a call center associate. She was injured before she entered the employer's premises and before starting her work shift. Moreover, there is no indication that her injury resulted from a risk to which she was exposed by her work environment. Under such circumstances, we find that claimant's injury did not arise out of her employment."

(Citation omitted.)

Claimant argues that the board erred in concluding that her injury was caused by a neutral risk. She argues that her injury was an "employment related risk." Alternatively, claimant argues that, even if we agree with the board's determination that it was a neutral risk, "claimant's work environment exposed her to it." Employer remonstrates that walking over snow and ice is a neutral risk rather than an employment-related risk. Employer further asserts that the "employment conditions [did not] put claimant in a position to be injured" because employer "had no control over the snow and icy weather" and "there is no indication that the employer required her to walk that particular route even if it was one employees used to walk to the entrance."[1] As explained below, we conclude that this was a neutral risk that arose out of claimant's employment.

There are three categories of anticipated risks of employment: (1) those "distinctly associated" with employment; (2) those personal to the claimant; (3) and those that are "neutral." *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29-30, 672 P2d 337 (1983) (citation omitted). The first is always compensable, the second is noncompensable, and the third may be, but is not always, compensable. *Id.* (citation omitted). According to Professor Larson, the risks "distinctly associated" with employment

"comprises all of the obvious kinds of injury that one thinks of at once as industrial injury. All the things that can go wrong around a modern factory, office, mill, mine, retail establishment, transportation system, or construction project—machinery breaking, objects falling, explosives

_____
[1] Employer also makes a preservation argument that we reject without discussion.

exploding, tractors tipping, fingers getting caught in gears, excavations caving in, and so on[.]"

Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 4.01 (Matthew Bender, rev ed 2017). Larson explains that, with respect to risks personal to the claimant, they are

> "so clearly personal that, even if they take effect while the employee is on the job, they could not possibly be attributed to the employment. If the time has come for the employee to die a natural death, or to expire from the effects of some disease or internal weakness of which he or she would as promptly have expired whether the employee had been working or not, the fact that demise takes place in an employment setting rather than at home does not, of course, make the death compensable."

*Id.* § 4.02.

By contrast, a neutral risk is present where the conditions of employment put a claimant in a position to be injured. *Sheldon v. US Bank*, 364 Or 831, 835, 441 P3d 210 (2019) (quotation marks and citation omitted); *see also id.* at 834 ("[N]eutral risks are risks that are neither employment risks or personal risks."). Citing Larson, the Supreme Court has explained what may qualify as a neutral risk:

> "[E]xamples of neutral risks would be an employe[e], who while working, is hit by a stray bullet, bitten by a mad dog, struck by lightning, or injured by debris from a distant explosion. Another kind of neutral risk is that where the cause itself is unknown. An employe[e] may have died on the job from unexplained causes or been attacked on the job by unknown persons, whose motives may have been personal or related to the employment."

*Livesley*, 296 Or at 30 n 6.

Regardless of the category of risk, however, to meet the threshold for the "arising out of" prong, there must be a causal connection between the injury and the employment. "A causal connection requires more than a mere showing that the injury occurred at the workplace and during work hours. A causal connection must be linked to a risk connected with the nature of the work or a risk to which the

work environment exposed claimant." *Redman Industries, Inc. v. Lang*, 326 Or 32, 35-36, 943 P2d 208 (1997) (citations omitted).

We disagree with claimant's assertion that snow and ice on employer's property is an "employment risk," because those risks are not "distinctly associated" with claimant's employment. The snow and ice are also not risks personal to claimant. That means, then, that in these circumstances, snow and ice are neutral risks.

We further conclude that the board's determination regarding claimant's exposure to risk is without substantial reason. On this point, we agree with claimant's contention that the board interpreted this prong, in light of the neutral risk, too narrowly. As described above, the board concluded that claimant's injury was not "the product of a risk connected with the nature of her work as a call center associate." That analysis would have been supported by substantial reason if claimant was exposed to risks "distinctly associated" with her employment as a call center associate. However, the board noted that claimant was exposed to a neutral risk, which, as described above, applies where the conditions of employment put claimant at a risk to be injured. The board did not address the fact that it was a condition of employment for claimant to travel to employer's office to perform her call center duties.

The board also noted that there was "no indication that her injury resulted from a risk to which she was exposed by her work environment." Claimant's work environment, however, includes more than just her desk at work; rather, it includes areas like hallways or paths to her workstation. As provided in the lease, as an employee, claimant had full access to the common area to access her office. Here, that common area includes the entrance that claimant used, which was the entrance closest to where her office was located. Our decision in *Hearthstone Manor v. Stuart*, 192 Or App 153, 160, 84 P3d 208 (2004), is instructive.

In *Hearthstone Manor,* the claimant injured her knee when she walked into a four-foot high, concrete cigarette receptacle on employer's premises when returning to

work from lunch. The claimant was walking with a friend as they returned from the employer's cafeteria and was injured while she was looking at trees as she walked on a slanted walkway to the building in which she worked. On judicial review, we concluded that the claimant's injury met the unitary work-connection test because, in part, the injury was "precipitated by walking along employer's path on her way back to work after lunch and that in doing so she was engaging in 'normal ingress' to work." *Id.* at 160. We further noted that "walking between the employer-controlled cafeteria to the workplace is an activity related to claimant's work" because, among other things, claimant's "primary activity" was returning to work. *Id.* at 160-61. That reasoning similarly applies to this case. Claimant was injured while engaged in "normal ingress," *viz.*, walking to her workspace over snow and ice to reach her office, which is an activity related to her employment because her employment requires her to work from her work station, and a risk to which her work environment exposed her because she could not arrive to her workstation without first entering the building where her office was located.

Employer argues that there were "alternative entrances that claimant could use to enter the building where she worked." That argument is unavailing. First, it does not address the fact that the entrance claimant regularly used was the entrance that was closest to her office. Second, and more fundamental to the issues presented in this case, it is unclear how the existence of alternative entrances would make a difference in evaluating the unitary work-connection test. Employer does not suggest that that entrance was closed due the inclement weather. Nor does employer suggest that only the alternative entrances were used for normal ingress and that the entrance that claimant used was an outlier. Rather, when considering whether claimant's work conditions caused her to be in a position to be injured, we conclude that she was injured while engaged in normal ingress, which is an activity related to her employment.

Employer also argues that "the snowy and icy conditions caused by the weather broke the causal connection between claimant's conditions of employment and

her injury." We disagree. Although employer cannot control the weather, it does exercise control over its response to potentially hazardous conditions that the weather may create around the entrances to its place of business. This is not a situation where there was an intervening event that broke the causal connection to the injury. We, again, turn to *Hearthstone Manor* as instructive.

In *Hearthstone Manor*, we looked to *SAIF v. Marin*, 139 Or App 518, 913 P2d 336, *rev den*, 323 Or 535 (1996), in addressing whether the claimant's knee injury "arises out of" her employment. We explained that, in *Marin*,

> "the claimant could not start his truck after finishing his shift. The truck was parked in an employer-furnished lot near an employer-built flower box. At the claimant's request, his supervisor's wife attempted to move the supervisor's truck into a position from which the two trucks could be connected by jumper cables, but in doing so, she ran into the flower box, tipping it onto the claimant and inflicting an injury."

*Hearthstone Manor*, 192 Or App at 158. Ultimately, we held that the claimant's work conditions did not place him in a position where he could be injured by the flower box because the claimant's injury "was not precipitated simply by his walking through the parking lot on the way to his car after work. Claimant's efforts to jump start his car and the circumstances that followed more directly caused him to be in a position to be injured by the flower box." *Marin*, 139 Or App at 525. We concluded that "those activities were sufficiently removed from his normal ingress and egress to and from work as to break the causal connection between his normal conditions of employment and his injury." *Id*.

In this case, the weather conditions did not remove claimant's activities from her normal ingress to work so as to break the causal connection between her normal conditions of employment and her injury. In this case, just as in *Hearthstone Manor*, the claimants were simply arriving to work to perform their job duties, but a condition of the work environment—an icy curb and concrete ash tray—caused an injury. Unlike *Marin*, where the claimant had attempted to leave work but could not do so because of the dead battery,

the causal connection between work and the injury was more attenuated. That is, there was an intervening event that led to the flower box falling and injuring the claimant. No such intervening event is present here. In short, because snow and ice in the common area were a risk "to which the environment exposed claimant," *Redman Industries*, 326 Or at 36, the board's conclusion otherwise was without substantial reason.

Accordingly, because both parts of the unitary work-connection test are satisfied, the board erred in upholding the denial of claimant's injury.

Reversed and remanded.