Argued and submitted June 16, 2011, affirmed June 27, 2012

In the Matter of the Compensation of
Carolyn G. McDermed, Claimant.

CITY OF EUGENE,
*Petitioner,*

*v.*

Carolyn G. McDERMED,
*Respondent.*

Workers' Compensation Board
0803945; A144661

282 P3d 947

Daniel J. Sato argued the cause for petitioner. With him on the opening brief was VavRosky MacColl, P.C. With him on the reply brief was MacColl Busch Sato, P.C.

Dale C. Johnson argued the cause for respondent. On the brief was Michael N. Warshafsky.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Employer seeks review of a Workers' Compensation Board (board) order awarding claimant police lieutenant compensation for injuries that she suffered when a motorist struck her as she walked across the street from her office to get a cup of coffee. Employer asserts that the board erred in determining that claimant's injuries occurred "in the course of" and "arose out of" her employment. ORS 656.005(7)(a).[1] We affirm for reasons amplified below.

We state the relevant facts consistently with the board's findings. Claimant was a police lieutenant for the City of Eugene, who at the time of the injury, was assigned to the Office of Professional Standards (which included "internal affairs"). Prior to that time, and for the majority of her 17-year career with the city, claimant had worked as a community police officer, which involved responding to calls for assistance, interacting with people while on the streets of Eugene, and engaging with public citizens about community crime prevention strategies. The board summarized the scope of claimant's work-related responsibilities as of the date of injury as follows:

"Although her duties primarily involved office work, her responsibilities included all police lieutenant and officer duties. Claimant's assignments included planning, organizing, and supervising police work, responding to major crime and accident scenes, overseeing or supervising investigations, conducting and overseeing internal affairs investigations, and performing the duties of a sworn police officer. The latter duties included responding to calls, detecting and deterring crime, directing traffic at incident scenes, and dealing with distraught victims.

"Moreover, claimant was required to implement the employer's 'neighborhood-based community policing' philosophy, and had been involved with community policing for the majority of her 17 years of work for the employer. Community policing entailed 'engaging the community in problem solving strategies to not only react to crime,' but to prevent it. * * * Successful community policing, therefore, required 'meeting a lot of people and being exposed to these

---

[1] ORS 656.005(7)(a) provides, in part, "A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death[.]"

people as a police officer and working with them.' In other words, claimant was expected to interact with people on the streets to forge relationships that would enhance both public safety and neighborhood quality of life."

Claimant generally worked Monday through Friday from 8:00 a.m. to 5:00 p.m., and she managed her own time. Claimant did not have scheduled break periods, but she would, if possible, routinely leave the office to "grab a cup of coffee" at a coffee shop that was located a block away from her office on the opposite side of the street. Claimant's practice was to purchase her coffee and immediately return to drink it at her desk. During the time that claimant was away from the office she was—as the board found—"still on duty and expected to carry a cell phone,[2] respond to calls, and return to the office if needed. She was also required to * * * perform police duties during the one-block walk to the coffee shop."

Although claimant had shifted positions within the police department, in addition to her internal investigation tasks, she also (as noted) acted as a community police officer when she was on duty—including when she left the office to get coffee.[3] For example, during her shift, claimant once witnessed a traffic accident on the street between her office and the coffee shop, and she responded by administering first aid and calling for emergency assistance. On another occasion, she escorted a woman to the woman's office near the coffee shop because the woman was fearful of her domestic partner, who had been stalking her. When claimant another time encountered a parked vehicle on fire near her office, she applied a fire extinguisher and exercised crowd control. Claimant also frequently engaged with citizens about community law enforcement concerns during her trips to the coffee shop.

---

[2] Employer paid for claimant's cell phone, which she carried with her at all times.

[3] In that regard, the board rendered the following finding:

"[D]uring these walks to the coffee shop, claimant would implement the employer's community policing initiative by interacting with members in the community regarding police/community matters, including discussing current public safety and current crime trends or patterns. These conversations were part and parcel of claimant's community policing obligations."

On the day of the injury, intending to purchase a cup of coffee and return to work, claimant left her desk and walked out of the office building. She took her cell phone with her. As claimant started to cross the street to the coffee shop, she was struck by a car and sustained multiple injuries.

Claimant sought workers' compensation benefits for her injuries, and employer denied the claim. The administrative law judge (ALJ) determined that claimant's injuries were compensable and, upon the employer's appeal, the board affirmed.

In so holding, the board rendered a comprehensive analysis of both the "in the course of" and "arising out of" components of the "unitary work-connection" test of compensability. With respect to the "in the course of" prong, the gravamen of the board's reasoning was as follows:

> "Here, claimant was injured while on duty and walking to get a cup of coffee, an activity that she routinely performed with the employer's consent. As an on-duty police officer, she was required to fulfill any and all job responsibilities while on that walk, including being a first responder to any situation. Indeed, it is undisputed that claimant had performed such vital duties in the past while on that same one-block walk to get a cup of coffee. Moreover, claimant was expected to perform, and had performed, essential community policing services as part of her regular walks to the coffee shop. As noted above, these obligations included interacting with citizens on the street during day-to-day activities to form relationships that could improve public safety. Thus, although the isolated task of getting coffee may have been 'personal in nature,' claimant's actions bore 'some reasonable relationship to [her] employment and [were] expressly or impliedly allowed by the employer.' [*Fred Meyer, Inc. v.*] *Hayes*, 325 Or [592,] 598-99[, 919 P2d 197 (1997)]."

Concomitantly, the board rejected employer's argument that the circumstances of claimant's injury implicated the "going and coming" rule, which would preclude compensability:

> "Here, claimant was not injured while going to or coming from work. Rather, she was injured while on duty and still required to perform her job duties. Claimant's 'work

space' was not limited to the office space that she occupied for the majority of her workdays, but included numerous other areas, including the location at which she was injured. Finally, given claimant's community policing responsibilities and other police officer functions, both of which she had performed on other walks to the coffee shop, we cannot conclude that claimant 'render[ed] no service for the employer' on these walks. *See* [*Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996)]."

Finally, the board explained its determination that claimant's injuries "arose out of" her employment. Referring to law enforcement activities that claimant was expected to perform, and historically had performed, during her "walks to get coffee while on duty," the board concluded:

"We find that claimant's risk of being struck by a motor vehicle as she was crossing an intersection while on duty as a police officer resulted from the nature of her work or originated from a risk to which her work environment exposed her. *See Hayes*, 325 Or at 601. As discussed above, claimant's job duties required that she engage in community policing, which in turn required interacting with people on the streets to discuss public safety issues. * * * Although claimant was not performing a discrete task at the moment she was injured, it does not follow that she was not working while injured, or that her work environment, which included the street and intersection where she was injured, did not expose her to the risk of being struck by a vehicle."

Employer seeks judicial review of the board's order, disputing the board's determinations as to both the "in the course of" and "arising out of" inquiries.

We review orders of the board for errors of law and substantial evidence. ORS 656.298(7); ORS 183.482; *Sandberg v. JC Penney Co. Inc.*, 243 Or App 342, 347, 260 P3d 495 (2011). In *Legacy Health Systems v. Noble*, 250 Or App 596, 600-01, 283 P3d 924 (2012) (*Noble II*), we summarized the applicable principles:

"A claimant bears the burden of establishing the compensability of his or her injury—and, specifically, the requisite connection between the injury and his or her employment. *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29, 672 P2d

337 (1983). 'A "compensable injury" is an accidental injury * * * arising out of *and* in the course of employment.' ORS 656.005(7)(a) (emphasis added). That is, both conjunctive statutory elements must be met. In determining whether an injury occurs 'in the course of' employment, we look at the time, place, and circumstances of the injury. *Robinson v. Nabisco, Inc.*, 331 Or 178, 186, 11 P3d 1286 (2000). The 'arising out of' prong refers to the causal link—the causal nexus—between the injury and the employment. *Krushwitz*[, 323 Or at 525-26]. '[A] worker's injury is deemed to "arise out of" employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker.' [*Hayes*, 325 Or at 601]. As noted, both prongs of the 'unitary work-connection test' must be met to some degree. *Krushwitz*, 323 Or at 531. Nevertheless, the test may be satisfied, even if the factors supporting one prong are weak, if those supporting the other are strong. *Redman Industries, Inc. v. Lang*, 326 Or 32, 35, 943 P2d 208 (1997)."

(Second brackets in *Noble II*.)

Further, in *Allen v. SAIF*, 29 Or App 631, 633-34, 564 P2d 1086 (1977), we explained—as we reiterated in *Noble II*, 250 Or App at 601—that the application of the "unitary work-connection test" is pragmatically driven by reference to the fundamental purposes of the workers' compensation statutes:

"The statutory phrase 'arising out of and in the course of employment' must be applied in each case so as to best effectuate the socio-economic purpose of the Workers' Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. 1 Larson, Workmen's Compensation Law § 2.20. Various concepts have arisen from attempts to rationalize that purpose, e.g., the going and coming rule, special errands, lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, etc. Each is helpful for conceptualization and indexing, but there is no formula for decision. Rather, in each case, every pertinent factor must be considered as a part of the whole. It is the basic purpose of the Act which gives weight to particular facts

and direction to the analysis of whether an injury arises out of and in the course of employment."

(Citation omitted.)

In disputing the board's "in the course of" determination, the overarching theme of employer's challenge is that, at the time that claimant was injured, she was engaged in a "solely personal mission." That proposition, in turn, proceeds from the premise that the board erroneously determined, as a factual matter, that claimant, on her walks to buy coffee, was not performing, and was not reasonably expected to perform, any activity associated with her employment. Specifically, in that regard, employer asserts that,

"while claimant's prior job in Community Policing may have specifically entailed 'essential community policing services[,]' her current work in Internal Affairs did not. Therefore, the Board's reliance on claimant possibly engaging the public in policy discussions while on her coffee missions was diluted since claimant's job at the time of injury had changed from Community Policing to an investigator in the Internal Affairs department."

That assertion partakes, at least implicitly, of a substantial evidence challenge to a factual finding by the board—*viz.*, the ALJ's finding (adopted by the board) that "claimant could, and in the past did, act as a police officer involved in community policing while ambulating to the coffee store" and the board's own finding that "performing police officer functions on public streets was a required duty of [claimant's] job."

In considering such a challenge, we assess whether "the record, viewed as a whole, would permit a reasonable person to make" the disputed finding. ORS 183.482(8)(c); *see also* ORS 656.298(7) (review of board orders "shall be as provided in ORS 183.482(7) and (8)"). That standard was easily satisfied here. At the hearing before the ALJ, claimant testified that her job duties at the time of injury included community policing duties in addition to internal investigation. Claimant gave multiple examples of situations in which she had actually acted as a community police officer during her time in internal affairs. *See* 250 Or App at 574. That testimony was not only explicit, but unrebutted. The record, thus,

substantiates the board's finding that community policing duties were within the scope of claimant's employment at the time that she was injured.

With that factual predicate reiterated, we turn to whether the board committed legal error, ORS 183.482(8)(a), in determining that claimant's injury occurred "in the course of" her employment. ORS 656.005(7)(a). The applicable principles are ostensibly straightforward: "An injury occurs 'in the course of' employment if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it." *Hayes*, 325 Or at 598. Activities that are personal in nature are "reasonably incidental" to employment "as long as the conduct bears some reasonable relationship to the employment and is expressly or impliedly allowed by the employer." *Id.* at 598-99. Conversely, injuries that occur during activities that are "essentially personal [in] nature" are generally not compensable. *Allen*, 29 Or App at 634. Finally, "[i]njuries sustained while an employee is going to or coming from the place of employment generally do not occur within the course of employment." *See, e.g., Legacy Health Systems v. Noble*, 232 Or App 93, 99, 221 P3d 180 (2009) (citing *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994)).

Employer argues that the employment relationship was suspended because claimant was on a personal mission to get coffee when she was injured. Employer alternatively asserts that the "going and coming" rule applies to this case and that "[t]o find claimant was in the course of her employment because she may have engaged in work activities on trips to the coffee shop in the past or that she could have been called upon to engage in police duties creates a police officer exception" to the going and coming rule. *See Walker v. SAIF*, 28 Or App 127, 130, 558 P2d 1270 (1977) (rejecting a police officer exception to the going and coming rule).

Claimant, reprising the board's reasoning, remonstrates that she was not going to or coming from work but was, instead, injured while on duty—and, thus, she was neither on a noncompensable personal mission nor subject to the

constraints of the "going and coming" rule. She further, and parenthetically, contends that, because the going and coming rule is inapposite, she is not (as employer insists) asking the court to recognize a police officer exception to that rule.

While we are mindful of the Supreme Court's admonition that "the reading of other decisions is normally of little assistance when this issue is presented and that each case must be decided on its own particular facts[,]" *Wallace v. Green Thumb, Inc.*, 296 Or 79, 81, 672 P2d 344 (1983), three cases are useful, by way of instructive contrast, in assessing employer's position: *Walker*, *Allen*, and *Halsey Shedd RFPD v. Leopard*, 180 Or App 332, 44 P3d 610 (2002).

In *Walker*—which arose in the predawn (1977) of the decisional development of the "unitary work-connection" test—the claimant police officer was struck by a motorist as she walked to her own car after her shift had ended. 28 Or App at 129. The claimant argued that her injuries were compensable because she was in uniform and on call at the time of the accident. *Id.* at 130. We concluded that the injuries were not compensable because the "going and coming" rule applied without the applicability of a "police officer" exception: "We * * * are unwilling to forge a general exception to the going and coming rule for persons whose employment requires a uniform and on-call status." *Id.* In so holding, we explicitly relied on a New York appellate decision, which we described as "similar," which also involved an officer who "was off active duty and was engaged in an activity in no way connected with his duties as a policeman[.]" *Matter of Blackley v. City of Niagara Falls*, 284 AD 51, 53, 130 NYS2d 77, 79 (1954).

In *Allen*, the decedent worker, a uniformed, on-call security guard at Mt. Hood Community College, died in a fatal car accident during his lunch hour. 29 Or App 631. The decedent worker "was free to take his lunch period whenever circumstances allowed, but [during his eight-hour shift] he was required to carry his walkie-talkie with him and stay within radio range of the college so that he could return for any emergency requiring his presence." *Id.* at 633. On the morning of the accident, the decedent worker took an early lunch break to tend to a personal matter at his credit union

and was killed in a car accident. After considering the totality of the circumstances, we held that the car accident may have occurred "in the course of" employment but that it did not "arise out of" the employment because of the "essentially personal nature of the decedent's errand." *Id.* at 634-35.

Finally, in *Leopard*, the claimant volunteer firefighter was injured when he fell in his driveway while carrying a friend's child and walking toward an employer-provided truck to go to church on a Sunday morning. 180 Or App 332. On the Sunday of the accident, the claimant was on call and in charge of responding to emergencies and, consequently, had an employer-provided pager on his person. As he walked while carrying the child, the claimant's pager went off—and, as he reached to take his pager out, the claimant's foot slipped and he fell, injuring his leg and ankle. *Id.* at 335. The claimant testified "specifically * * * that the pager did not have anything to do with causing him to slip." *Id.*

The board determined that the injury was sufficiently work-related to be compensable, and we reversed and remanded. In so holding, we concluded that, although circumstances established, albeit not strongly, that the injury occurred "in the course of" the claimant's employment, the claimant's injuries did not "arise out of" his employment. As pertinent to the "in the course of" issue presented in the case, we observed that " 'on-call' status, although not sufficient in and of itself to satisfy the 'arises out of employment' prong of the test, conceivably can provide a basis to conclude that a worker's injury has occurred 'in the course of employment.' " *Id.* at 337 (citing *Walker*, 28 Or App at 130; *Allen*, 29 Or App at 634-35). We further observed that the work connection was "not a strong one" because the "claimant was primarily engaged in the personal activity of going to church, and many of the circumstantial facts involved (*e.g.*, the decision whether and when to go to church, carrying the child as he did so, the composition of his driveway, etc.) were not employment related at all." *Id.* at 338. In sum, we concluded that "[h]is activity at the time therefore is most accurately characterized as significantly personal in nature, with an incidental connection to work." *Id.*

Thus, three cases—one (*Walker*) in which the "in the course of" prong was (at least implicitly) not satisfied, a second (*Allen*) in which it "may conceivably" have been satisfied, and a third (*Leopard*) in which that prong was established, albeit not strongly. Claimant's circumstances here are materially—indeed, patently and decisively—distinguishable from those in those three cases. Unlike the officer in *Walker*, who was off duty at the time of injury, claimant's shift had not ended. Rather, she was still on duty, subject to employer's instantaneous direction and control, and under a continuing duty to engage in work-related tasks even as she took her short walk to pick up coffee. Similarly, unlike the security guard in *Allen*, claimant was not taking a break from work to run a purely personal errand; she was still on duty. And again, unlike the volunteer firefighter in *Leopard*, claimant was not on call, but was on duty and was under a duty to perform, as necessary and appropriate, law-enforcement related functions. *See Leopard*, 180 Or App at 339 (explaining that, although the claimant was nominally "on duty" all weekend, his actual status "was indistinguishable in practical terms from being on call").

Bluntly, and as the board specifically found: Claimant did not cease being an on-duty police officer when she left her office and entered the street. Although her motivation may have been to buy a cup of coffee, claimant was still on duty and was obligated to perform community policing functions while she was on the street. Further, if she had encountered a circumstance requiring her active intervention or assistance as a police officer, she was obligated to respond, immediately, as a police officer—and, indeed, remained subject to employer's continuing direction by way of her employer-provided cell phone. Thus, these circumstances do not give rise to some *de facto* adoption of a "police officer" exception to the going and coming rule, because the going and coming rule is simply inapposite here. The board did not err in determining that the injury occurred "in the course of" claimant's employment.

We turn, finally, to the board's conjunctive determination that claimant's injuries "arose out of" claimant's employment. As noted, "a worker's injury is deemed to 'arise out of' employment if the risk of the injury results from the nature of his or her work or when it originates from some risk

to which the work environment exposes the worker." *Hayes*, 325 Or at 601.

Employer argues that claimant failed to demonstrate the requisite causal connection, because claimant was not performing a work-related activity when she was injured and her work investigating internal affairs did not expose her to the risk associated with crossing the street. Claimant responds that being struck by a motor vehicle while crossing a busy street is a risk associated with community policing and, because the street was a place where claimant performed her work duties, claimant's work environment exposed her to the risk.

Claimant, as the board concluded, is correct. *See* 250 Or App at 575-76 (setting out the board's reasoning). Although the "arising out of" element can be satisfied by reference either to the "nature of [a claimant's] work" or to the claimant's "work environment," *Hayes*, 325 Or at 601, the circumstances of this case establish both. With respect to risks associated with the nature of claimant's work, the nature of that work—that is, claimant's job responsibilities—included a community policing component, which, as the board found, "required interacting with people on the streets to discuss public issues." That, in turn, exposed claimant to the risks of street-based interactions, including being struck by a motor vehicle as she crossed the street.

Alternatively, even if the community policing aspect of claimant's work could be somehow discounted, claimant's "work environment" was not, as employer seems to insist, confined to her office. Rather, that environment encompassed the totality of circumstances to which claimant was exposed so long as she was on duty and subject to a continuing obligation to act as a law enforcement officer in response to events she encountered.[4] When claimant was on duty and on the street, the street was her "work environment"—and any injury she suffered either as a result of distinctly work-related risks, or of neutral risks associated with that environment to which the conditions of employment exposed her,[5]

---

[4] As, indeed, claimant had in the past. *See* 250 Or App at 574.

[5] *See, e.g., Panpat v. Owens-Brockway Glass Container*, 334 Or 342, 349-50, 49 P3d 773 (2002) ("Risks distinctly associated with the employment are universally compensable; risks personal to the claimant are universally noncompensable; and

compensably "arose out of" her work.[6] *Compare Sandberg*, 243 Or App at 350 (the claimant's injury "resulted from a risk of her work environment" and, thus, "arose out of" her employment where the claimant, who worked in her home, was injured when she tripped over her dog), *with Noble II*, 250 Or App at 603-04 (the claimant's injuries did not "arise out of" her work where, during a paid break from her work as a hospital patient care coordinator and on her way to deposit a personal check, the claimant slipped on a slick surface of employer-owned parking lot that she did not use and was not used by hospital staff). Thus, the board did not err in determining that claimant's injuries arose out of her employment—and, more generally, that those injuries were compensable.

Affirmed.

---

neutral risks are compensable if the conditions of employment put claimant in a position to be injured." (Internal quotation marks omitted.)).

[6] In that regard, the circumstances here are materially different from those in *Allen*, in which the decedent campus security guard died as a result of injuries from an auto accident that occurred at least a mile from campus while he was on a personal errand. 29 Or App at 633. Thus, his death was not the result of a risk to which he was exposed in his campus-circumscribed work environment.