Argued and submitted May 8, resubmitted en banc August 8, reversed and
remanded October 17, 2012, petition for review denied March 28, 2013
(353 Or 428)

In the Matter of the Compensation of
Kevinia L. Frazer, Claimant.

ENTERPRISE RENT-A-CAR CO. OF OREGON,
*Petitioner,*

*v.*

Kevinia L. FRAZER,
*Respondent.*

Workers' Compensation Board
0902947; A146596

289 P3d 277

Travis L. Terrall argued the cause and filed the briefs for
petitioner.

Christine Jensen argued the cause and filed the brief for
respondent.

Before Haselton, Chief Judge, and Armstrong, Wollheim,
Brewer, Schuman, Ortega, Sercombe, Duncan, and Hadlock,
Judges, and Edmonds, Senior Judge.

HADLOCK, J.

Wollheim, J., dissenting.

**HADLOCK, J.**

Employer seeks review of an order of the Workers' Compensation Board in which the board determined that claimant had suffered an injury that arose out of and in the course of her employment and that the injury was, therefore, compensable. Employer challenges only the board's determination that the injury occurred "in the course of" claimant's employment. We agree with employer that the board erred in not applying the "going and coming" rule, under which "[i]njuries sustained while an employee is going to or coming from the place of employment generally do not occur within the course of employment" except in certain limited circumstances. *Legacy Health Systems v. Noble*, 232 Or App 93, 99, 221 P3d 180 (2009) (*Noble I*). Because the board did not apply the "going and coming" rule, it also did not determine whether any exceptions to that rule applied in a way that would result in claimant's injury being compensable despite the fact that it occurred while she was returning to her place of employment from a break. Accordingly, we reverse and remand so the board may consider that question.

Both parties accept the board's findings, which may be summarized as follows. Claimant was employed at employer's call center and regularly worked an eight-hour shift with paid morning and afternoon breaks, as well as a lunch break. Claimant, like other employees, was "not allowed to stay in the work area while on break." Instead, employees were free to leave the call center to get coffee or to run other errands nearby. Employer also provided two on-site break rooms with beverages and vending machines.

Employer's call center is located in a "strip" with multiple other businesses. Employer does not own or manage the parking lot associated with the "strip," but some spaces in the lot are designated for use by employer's customers and employees. A covered "smoking hut" is located in the parking lot, approximately 100 feet from employer's front door. Employer does not own the structure, which is open to the public. Employer's employees could utilize that structure while on their breaks.

In March 2009, claimant visited with coworkers at the smoking hut while she was on a 10- or 15-minute break.

As claimant headed back to work through the parking lot, her shoe caught in a break in the pavement where a post had been removed and she fell, twisting her knee and ankle. An MRI revealed "a complex tear of the lateral meniscus." That injury did not respond to conservative treatment, and claimant eventually was referred for surgery.

Employer's claims representative denied claimant's worker's compensation claim for a right-knee injury. An administrative law judge (ALJ) set aside that denial based on his determination that claimant's injury was compensable. Employer sought review before the board, which ruled—as pertinent here—that claimant's injury arose "in the course of employment":

> "[W]e find that claimant's injury occurred within the period of employment (a paid break, during regular work hours), at a place where she reasonably was expected to be (returning from the break shelter, the use of which the employer had acquiesced to, via the normal route), and while she was doing something reasonably incidental to employment (on a paid break and checking the clock to make sure she was on time)."

The board also determined that the other requirements for compensability were met and, accordingly, affirmed the ALJ's order. Employer petitioned for review to this court.

Although employer challenges only a single aspect of the board's compensability determination—its ruling that claimant's injury arose in the course of employment— we quote a recent summary of the major requirements of a "compensability" determination to provide context for our discussion.

> "A claimant bears the burden of establishing the compensability of his or her injury—and, specifically, the requisite connection between the injury and his or her employment. 'A compensable injury is an accidental injury * * * arising out of *and* in the course of employment.' ORS 656.005(7)(a) (emphasis added). That is, both conjunctive statutory elements must be met. In determining whether an injury occurs 'in the course of' employment, we look at the time, place, and circumstances of the injury. The 'arising out of' prong refers to the causal link—the

causal nexus—between the injury and the employment. '[A] worker's injury is deemed to arise out of employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker.' As noted, both prongs of the 'unitary work-connection test' must be met to some degree. Nevertheless, the test may be satisfied, even if the factors supporting one prong are weak, if those supporting the other are strong."

*Legacy Health Systems v. Noble*, 250 Or App 596, 600-01, 283 P3d 924 (2012) (*Noble II*) (ellipsis and brackets in original; some citations and internal quotation marks omitted).

Only the first prong of the unitary work-connection test is at issue in this appeal: the requirement that the claimant's injury have occurred "in the course of employment." ORS 656.005(7)(a). As the Supreme Court has explained, the "going and coming" rule provides guidance on that point:

"The general rule in Oregon—the 'going and coming' rule— is that *injuries sustained while an employee is traveling to or from work do not occur in the course of employment* and, consequently, are not compensable."

*Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996). The rule reflects the general purpose of the Workers' Compensation Law, which is to protect workers and their families "from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer." *Allen v. SAIF*, 29 Or App 631, 633, 564 P2d 1086, *rev den*, 280 Or 1 (1977). Injuries suffered when a worker is traveling to or from work generally are noncompensable because, during that time, the employee "'is rendering no service for the employer.'" *Krushwitz*, 323 Or at 527 (quoting *Heide / Parker v. T.C.I. Incorporated*, 264 Or 535, 540, 506 P2d 486 (1973)).

In addition to adopting the "going and coming" rule, Oregon courts also have developed exceptions to that general noncompensability principle. The "parking lot" exception, for example, provides that an "injury sustained on premises controlled by the employer while an employee is coming to or going from work occurs within the 'course of employment.'" *Noble I*,

232 Or App at 99; *see also Cope v. West American Ins. Co.*, 309 Or 232, 240 n 3, 785 P2d 1050 (1990) ("It bears emphasis that the parking lot 'rule' is in reality an *exception* to the general rule that injuries sustained while going to or coming from work are noncompensable." (Emphasis in original.)).

We have applied the "going and coming" rule broadly, applying it—at least implicitly—not only to injuries that occur before the workday begins and after it ends, but also when a claimant is injured while leaving the workplace for lunch or returning from a lunch break. *See, e.g., J A K Pizza, Inc.-Domino's v. Gibson*, 211 Or App 203, 207, 154 P3d 159 (2007)` ("going and coming" rule might preclude compensability if the claimant had hurried back to his place of employment "to avoid overextending" an unpaid lunch break, but not if the employer had directed him to return to work before the end of his lunch break, because then the claimant would have been on a "special errand"); *Hearthstone Manor v. Stuart*, 192 Or App 153, 157-58, 84 P3d 208 (2004) (an injury that the claimant incurred while returning to work from her lunch break arose in the course of her employment because the "parking lot" exception to the "going and coming" rule applied). The rule also applies when a claimant is injured while on a shorter break—even a paid break—away from work. *See Noble I*, 232 Or App at 95-96 (an injury that the claimant suffered while away from her workplace on a morning break arose in the course of her employment because the "parking lot" exception to the "going and coming" rule applied).

Conversely, we have held that the "going and coming" rule does not apply when, although the employee was injured while traveling to or from the workplace, the employee still was "on duty" or otherwise subject to the employer's direction and control. *See, e.g., City of Eugene v. McDermed*, 250 Or App 572, 582, 282 P3d 947 (2012) (because a police officer who left the office to get a cup of coffee "was still on duty and was obligated to perform" police functions while she was on the street, the "going and coming" rule was "simply inapposite"); *Iliaifar v. SAIF*, 160 Or App 116, 122, 981 P2d 353 (1999) ("the 'going and coming' exception to work connectedness [was] inapplicable" because the

employer had directed the claimant to undertake the travel he was engaged in when injured).

In this case, the board appropriately started its analysis of the "'in the course of' prong of the 'work connection' test" by considering whether the "going and coming" rule applied. The board acknowledged that, for those purposes, the law does "not distinguish an employee going to or coming from work at the beginning or end of the workday from an employee going to or coming from work at the beginning or end of a break, whether paid or unpaid." Nonetheless, the board concluded, the "going and coming" rule did not apply here for two reasons: first, because claimant was taking only "a brief" break during regular work hours; second, because claimant had traveled only about 100 feet from her workplace during that break.

Instead of applying the "going and coming" rule, the board considered, in a more global sense, "whether claimant [had] satisfied the 'in the course of' prong to some degree." Based on evidence that employer required employees to leave their work stations during breaks, allowed (but did not require) employees to leave the building during breaks, and acquiesced in employees' use of the "smoking hut," as well as evidence that claimant had discussed work-related matters with her colleagues while on break and "was returning to work via the normal path" when she fell, the board concluded that claimant's injury occurred "in the course of" her employment:

> "Based on this evidence, we find that claimant's injury occurred within the period of employment (a paid break, during regular work hours), at a place where she reasonably was expected to be (returning from the break shelter, the use of which the employer had acquiesced to, via the normal route), and while she was doing something reasonably incidental to employment (on a paid break and checking the clock to make sure she was on time). Under these circumstances, we find that the 'in the course of' prong of the unitary work connection test is satisfied."

With respect, we reject the board's determination that the "going and coming" rule does not apply in those circumstances. The board's reliance on claimant having

been only on a "brief" break cannot be squared with our decision in *Noble I*, which involved an injury that the claimant suffered while she was on "a paid 15-minute break" from work. *Noble II*, 250 Or App at 597. In that case, "we sustained the board's determination that, because claimant had been injured in a parking lot over which employer had control, the circumstances fell within the 'parking lot' exception to the general principle that injuries sustained while going to or coming from the place of employment are not compensable[.]" *Id.* at 598; *see Noble I*, 232 Or App at 100. Although we did not say explicitly that claimant's injury would be noncompensable under the "going and coming" rule if the parking-lot exception did not apply, that is the implication of our opinion. We perceive no material distinction between the duration of the 15-minute break in *Noble I* and the break in this case, which the board found "was 10 or 15 minutes long."

We also find no significance to the fact that claimant stayed within 100 feet of her workplace during her break. In *Noble I*, the claimant had not gone far during her 15-minute break, but had only left the hospital where she worked, "crossed a street, and started to cut across a parking lot" on her way to a "credit union located at a different part of employer's campus" when she fell. 232 Or App at 95. There, too, the claimant had not strayed far from her workplace while on her paid break. Nonetheless, we decided the case on the ground that the parking-lot *exception* to the "going and coming" rule applied; we did not hold that the rule itself did not apply in the circumstances surrounding the claimant's injury. In sum, the board's rationale for not applying the "going and coming" rule does not withstand scrutiny.

In defending the board's decision, claimant argues, essentially, that the board may choose not to apply the "going and coming" rule at all and may, instead, simply decide more generally that a claimant's injury arose in the course of her employment because the employer had some control over the area where the injury occurred. In support of that argument, claimant relies on our decisions in which, she contends, we either held that the "going and coming" rule was inapplicable because the employer had some control over the area where the claimant was injured or simply did

not apply the "going and coming" analysis at all. Claimant misunderstands our holdings in those cases. In *Hearthstone Manor*, for example, we did not hold that the "going and coming" rule was inapplicable, as claimant contends. Rather, we held that the parking-lot exception to that rule applied because the employer had some control over the place where the claimant was injured. 192 Or App at 157-58. We also have applied that exception in circumstances involving other employer-controlled areas, not just parking lots. *See McTaggart v. Time Warner Cable*, 170 Or App 491, 496, 16 P3d 1154 (2000), *rev den*, 331 Or 633 (2001) (affirming board's determination that the circumstances in which the claimant was injured—while walking on a slope that led to a "parking area for employer's vehicles"—were analogous to those contemplated by the parking-lot exception to the "going and coming" rule); *Henderson v. S.D. Deacon Corp.*, 127 Or App 333, 336-37, 874 P2d 76 (1994) (applying the parking-lot exception to circumstances involving an elevator over which the employer had some control). We did not hold in any of those cases that the "going and coming" rule did not apply; rather, we determined that the circumstances in those cases fell within the parking-lot exception to that rule.

To some extent, claimant's argument also conflates the "in the course of" and "arising out of" prongs of the unitary work-connection test. As we have acknowledged, "some overlap between the facts and circumstances pertaining to the two prongs may be unavoidable[.]" *Noble II*, 250 Or App at 601. Nonetheless, the two parts of the work-connection test relate to different considerations and, to the extent it informs the analysis, evidence of "employer control" takes on different significance in those two contexts. Our *Noble* opinions emphasize that difference. Those cases related to the compensability of an injury the claimant suffered "when, during a paid break, she slipped and fell in an employer-owned parking lot while walking from her workplace to a credit union to deposit a personal check." *Id.* at 597. The Workers' Compensation Board first determined that the claimant's injury was compensable, largely because her employer "controlled the parking lot where the fall occurred." *Noble I*, 232 Or App at 95. On review, we determined that the

board correctly had decided that the injury occurred "in the course" of the claimant's employment, because—although claimant was on a break (and the "going and coming" rule therefore generally would apply)—the employer exercised control over the parking lot where she was injured, creating a nexus between the time and place of her injury and her employment. *Id.* at 100. Thus, our holding regarding applicability of the parking-lot exception to the "going and coming" rule related explicitly to the existence of a sufficient relationship between "the time, place, and circumstances of the injury" and the claimant's work. *Id.* at 99. That is, we concluded that a sufficient *temporal and spatial* relationship existed between the injury and the employment to "justify connecting that injury to the employment." *Krushwitz*, 323 Or at 526.

That determination of employer control was not, however, sufficient to resolve whether the *Noble* claimant's injury "arose out of" her employment. Accordingly, we remanded the case because the board had not addressed that second prong of the work-connection test. *Noble I*, 232 Or App at 100. On review after that remand, we emphasized that the "arising out of" prong of the work-connection test relates to "the causal link—the causal nexus—between the injury and the employment." *Noble II*, 250 Or App at 600. Thus, the "arising out of" analysis does not focus on the same temporal/spatial connection that informs the "in the course of" test. Instead, it relates to whether a claimant's injury "is the product of either (1) 'a risk connected with the nature of the work' or (2) 'a risk to which the work environment exposed claimant.'" *Id.* at 603 (citation omitted). Evidence about the employer's control over the location where the claimant was injured may inform that analysis, but only to the extent it establishes an "environmental" or "causal" nexus to the claimant's work. *Id.* In *Noble II*, the employer's control over the parking lot did not have that causal connection with the claimant's injury (among other things, the claimant did not park her car there). Consequently, we held, the board "erred in concluding that claimant's injury arose out of her employment." *Id.* at 604.

The point is that the mere fact of "employer control" over the location where a claimant is injured is not enough

to establish compensability of the injury. Depending on the particular circumstances of a case, that control may help demonstrate a sufficient temporal and spatial nexus between the injury and the employment, *if* the "going and coming" rule otherwise would apply and *if* the employer's control establishes the applicability of the parking-lot exception to that rule. Or, again depending on the particular facts, evidence of "employer control" may contribute to the conglomeration of circumstances establishing a sufficient *causal* nexus between the injury and the claimant's work. But the employer's control over the location where an injury occurred is not sufficient, standing alone, to satisfy either prong of the work-connection test. We reject claimant's contrary suggestion.

In some ways, claimant's argument that the board could sidestep applying the "going and coming" analysis anticipated our recent statement in *Noble II* that appellate court decisions addressing compensability "do not impose methodological straightjackets." 250 Or App at 601. Of course, each case must be decided on its own facts and with an eye to the purposes of the Workers' Compensation Law. Nonetheless, our opinions and those of the Supreme Court do embrace general principles that the board is bound to follow. One of those settled principles is that "injuries sustained while an employee is traveling to or from work do not occur in the course of employment and, consequently, are not compensable" unless an exception to the "going and coming" rule applies. *Krushwitz*, 323 Or at 526. That principle applies here. Claimant was away from her workplace on a regular break and she was not "on duty" or otherwise subject to employer's direction or control. Accordingly, the "going and coming" rule applies. It follows that claimant's injury did not arise in the course of her employment unless the circumstances under which she was injured fall within some exception to the rule. The board erred when it concluded otherwise.

Because it did not apply the "going and coming" rule, the board explained, it "[did] not address the employer's arguments that it did not exercise 'control' of the area where the injury occurred under the 'parking lot' exception to the

'going and coming' rule." We remand so the board can make that determination.

Reversed and remanded.

**WOLLHEIM, J.,** dissenting.

The majority reverses the Workers' Compensation Board's order that held that claimant suffered a compensable injury when she slipped and fell on her knee during her morning break. The majority agrees with her employer, Enterprise Rent-A-Car, that the board erred in not considering the "going and coming" rule when the board held that claimant's injury was "in the course of" claimant's employment. For the reasons that follow, I respectfully dissent.

In order to give context to my dissent, it is necessary to dive into the murky sea of workers' compensation jargon. This jargon has developed over the last almost 100 years.[1] The Workers' Compensation Law began as a simple trade-off between employers and their employees. Employers would receive limited exposure to damages, and employees would receive limited benefits regardless of fault. The statutory requirement that the injury arise out of and be in the course of employment, ORS 656.005(7)(a), has mutated by means of judicial gloss into judicially created rules and judicially created exceptions to those rules—all of which were originally created to be helpful, but which now obscure the legislative purpose in enacting the Workers' Compensation Law and the legislative intent as expressed by the words the legislature used. Perhaps I am more critical than necessary, because I recognize that these rules developed to address changes in the workplace that were not imagined when the Workers' Compensation Law was adopted. Nonetheless, these rules now are a byzantine labyrinth that the parties must navigate. I will now attempt to navigate that murky sea.

One of the early doctrines was the "personal comfort" doctrine. Under the "personal comfort" doctrine, injuries sustained while engaged in activities for the personal comfort

---

[1] The 1912 Legislative Assembly adopted the Workers' Compensation Law. Or Laws 1913, ch 112, § 12. A November 4, 1913, referendum passed, and the Governor signed the referendum on November 17, 1913. The law was held constitutional in *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 154 P 106 (1915).

of the employee are compensable if the conduct was "expressly or impliedly allowed by the employer." *Clark v. U.S. Plywood*, 288 Or 255, 266, 605 P2d 265 (1980). The basis of the doctrine is that "certain activities by employees are expected and necessary and the conduct of those activities is not a departure from the employment relationship." *Halfman v. SAIF*, 49 Or App 23, 29, 618 P2d 1294 (1980). While the worker was going to, using, or returning from the bathroom, or eating lunch, the worker was not working; there was no causal link between the injury and any benefit to the employer. Yet, such an injury was determined to be compensable.

Another rule that generated many exceptions is the "traveling employee" rule, which provides that any injury while traveling for work is compensable. *SAIF v. Reel*, 303 Or 210, 216, 735 P2d 364 (1987). Then there is the "bunkhouse" rule, which covers injuries when the worker was required to live on the employer's premises (hence the name of the rule). *Leo Polehn Orchards v. Hernandez*, 122 Or App 241, 246, 857 P2d 213, *rev den*, 318 Or 97 (1993). At times, the euphemism "personal mission" rule was used to cover various nonproductive work activities. *Mellis v. McEwen, Hanna, Grisvold*, 74 Or App 571, 574-75, 703 P2d 255, *rev den*, 300 Or 249 (1985); *Jordan v. Western Electric*, 1 Or App 441, 444, 463 P2d 598 (1970). There are multiple additional judicially adopted rules all designed to help determine whether an injury is compensable. But I digress, because the rules the majority believes are at issue in this claim are the "going and coming" rule and the "parking lot" exception to that rule.

The Workers' Compensation Law covers some, but not all, injuries occurring during work. When an employee is travelling to work or returning home after work, the employee is providing no service for the employer. Thus, absent other circumstances, an injury while going to work or coming from work is not compensable.[2] *Philpott v. State Ind.*

---

[2] Likewise, an injury that occurs after the employee leaves the employer's premises on an unpaid break is generally noncompensable under the "going and coming" rule, unless the employee was on a "special errand." *J A K Pizza, Inc.-Domino's v. Gibson*, 211 Or App 203, 206, 154 P3d 159 (2007). The "special errand" exception applies if the employee was acting in furtherance of the employer's business at the time of the injury or the employer had a right to control the employee's travel. *Id.*

*Acc. Com.*, 234 Or 37, 40-41, 379 P2d 1010 (1963). One such circumstance is addressed by the "parking lot" exception, which provides that an employee's injury in a parking lot that is either owned by the employer or maintained by the employer is compensable, subject to multiple exceptions. *Legacy Health Systems v. Noble*, 232 Or App 93, 99, 221 P3d 180 (2009) (*Noble I*). The theory behind the "parking lot" exception appears to be that the employer's control over the premises keeps the employee in the course of employment. *Id.* Let me turn to the undisputed facts in this case.

## ENTERPRISE'S WORK ENVIRONMENT

Claimant worked at employer's call center, which appears to be located in a "strip" in Lane County. Enterprise leases office space and two rows of parking spaces in the front of the building. Over the front entrance of the building is a sign bearing Enterprise's name and logo. Other tenants lease space in the building. Other than the parking spaces that employer leases, the remaining parking spaces are available for public use.

Claimant regularly worked an eight-hour shift with paid morning, afternoon, and lunch breaks. Employer required employees to leave their work area during all break periods. Employer provided two on-site break rooms. Employees were not permitted to smoke in the office building or within 10 feet of the front door. However, there was a smoking hut in the parking lot, and employer acquiesced in employees using the smoking hut, which was about 100 feet from the front door. The smoking hut was not in the area of employer's leased parking spots. A photograph of the area was admitted as an exhibit and is attached as an appendix.

In March 2009, claimant took her morning break, along with some coworkers, in the smoking hut. Claimant was returning to her workplace when she fell and injured her knee.

## THE UNITARY TEST AND THE TWO PRONGS

In *Rogers v. SAIF*, 289 Or 633, 643, 616 P2d 485 (1980), the Supreme Court adopted a "unitary work-connection approach," under which the court asks the question, "is the relationship between the injury and the employment

sufficient that the injury should be compensable?" *Id.* at 642. The "should" reflects the trade-offs inherent in the Workers' Compensation Law. The court stated that it was not its intent to substantially change the fundamental Workers' Compensation Law because, if the injury has sufficient work relationship, then the injury satisfies both the "arising out of" and the "in the course of" employment prongs. *Id.* at 643. Easily stated and hard to apply.

Both prongs are part of the definition of a compensable injury. ORS 656.005(7)(a). To be compensable, an injury must arise out of and be in the course of employment. Both prongs must be satisfied to some degree, and the facts of one prong can be multiple while the facts of the other prong minimal. *Redman Industries, Inc. v. Lang*, 326 Or 32, 35, 943 P2d 208 (1997). One difficulty in the application of the two prongs is that the prongs can overlap.[3] As we explained in *Legacy Health Systems v. Noble*, 250 Or App 596, 599, 283 P3d 924 (2012) (*Noble II*), the application of the unitary work-connection test "cannot, and must not, be divorced from its overarching purpose—and, indeed, the overarching purpose of the workers' compensation statutes." That purpose is to protect workers from financial hardships due to injuries incurred in production, regardless of fault. *SAIF v. Fortson*, 155 Or App 586, 591, 964 P2d 293 (1998); *see also Robinson v. Nabisco, Inc.*, 331 Or 178, 185, 11 P3d 1286 (2000); *Rogers*, 289 Or at 643. Thus, "the ultimate determination is functional, predicated on practical reference to the purpose of the workers' compensation statutes," and each case must be decided on its own particular facts. *Noble II*, 250 Or App at 601.

THE ARISING OUT OF EMPLOYMENT PRONG

The "arising out of" employment prong refers to a causal connection between the nature of the work or the work environment and the injury. *Redman Industries*, 326

---

[3] As the Supreme Court noted in *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 597 n 8, 943 P2d 197 (1997), "'an uncompromising insistence on independent application of the two portions of the test can, in certain cases, exclude clearly work-connected injuries'" (quoting 1 *Larson's Workers' Compensation Law* § 6.10 at 3-3 (rebound ed 1997)). Rather, "[b]oth prongs serve as analytical tools for determining whether, in the light of the policy for which that determination is to be made, the causal connection between the injury and the employment is sufficient to warrant compensation." *Id.* at 597.

Or at 36. The "arising out of prong" requires more than a showing that the injury occurred at work and during work hours. *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 368, 867 P2d 1373 (1994). For example, in *Panpat v. Owens-Brockway Glass Container*, 334 Or 342, 49 P3d 773 (2002), a worker's death did not arise out of employment where an on-leave coworker (an upset former lover) returned to work and shot and killed the worker. The court concluded that, for the worker's death to arise out of employment, her risk of being shot must be causally linked to the work environment or a risk to which the work environment exposed the worker. *Id*. at 349. The court concluded that the risk in *Panpat* was a personal risk and, for that reason, did not arise out of employment. *Id*. at 351-52.

*Redman* is at the other end of the "arising out of" spectrum. An employee, who had been subject to racially derogatory name-calling by the claimant, hit the claimant, because the employee believed that he was about to be fired anyway. 326 Or at 34. The court held that the injury to the claimant satisfied the "arising out of" prong because work was the sole place where the two were exposed to each other.[4] *Id*. at 41.

Somewhere in the middle (and somewhat dated) is *Mellis*. The claimant was a salaried legal assistant who took a break in the cafeteria of the office building where she worked. *Mellis*, 74 Or App at 573. As she was returning to work, she became entangled in the leg of the cafeteria's chair, tripped, and fractured a bone in her right leg. The law firm had a break area but acquiesced in employees taking breaks in the cafeteria. *Id*. The court concluded that this was a typical coffee break that was contemplated by an employer and was not a departure from the employment relationship. The fact that the injury was off-premises was only one of several factors to be considered and was not decisive. *Id*. at 575. Although *Mellis* is an older case, its analysis is helpful.[5]

---

[4] Although *Redman* was decided before *Panpat*, the court in *Redman* used a hypothetical that was very similar to the facts in *Panpat*. *Redman*, 326 Or at 41. The *Panpat* court never discussed whether the claimant and her killer met at work and would not have had any relationship had they not worked together.

[5] Even though we no longer rely on the factors identified in *Mellis* as an independent and dispositive test of work-connection, some or all of those factors remain helpful inquiries under the two-prong analysis. *Freightliner Corp. v. Arnold*,

Enterprise does not challenge the board's conclusion that claimant's injury arose out of her employment, *i.e.*, that there is a causal link between claimant's work or work environment and her injury.

## IN THE COURSE OF EMPLOYMENT PRONG

The "in the course of" employment prong refers to the time, place, and circumstances of the injury. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996). *Hayes* presents the clearest discussion of the "in the course of" employment prong:

> "An injury occurs 'in the course of' employment if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it. * * * By 'reasonably incidental to' employment, we include activities that are personal in nature—such as a telephone call home or a brief visit with a coworker—as long as the conduct bears some reasonable relationship to the employment and is expressly or impliedly allowed by the employer."

325 Or at 598-99.

In *Hayes*, the claimant finished her work shift in the retail department, shopped for about 20 minutes in the grocery department, left, and walked to the area of the parking lot where the employer had directed its employees to park. There, she was assaulted, and her injuries required medical treatment. 325 Or at 594-95. The difficult issue was whether the injury occurred in the course of employment, specifically because, at the time of the injury, the claimant had finished work about 20 minutes earlier.[6] *Id.* at 598-99. The employer argued that, because the claimant had not immediately gone to her car once her shift ended, she was not in the course of employment when she was injured. *Id.* at 595. Further, the time that the claimant spent shopping was personal to the claimant and terminated the claimant's

---

142 Or App 98, 103-04, 919 P2d 1192 (1996) (affirming the board's conclusion that, based on the totality of circumstances, the claimant's occupational disease arose out of and in the course of his employment).

[6] The court's conclusion that the claimant satisfied the "place" factor in the "in the course of" employment prong is implicit in its discussion of the "going and coming" rule and the "parking lot" exception. *Hayes*, 325 Or at 597-98.

connection with her work. *Id.* at 598. The court disagreed. The court accepted the board's finding that the claimant's brief shopping was insufficient to sever the connection with work. *Id.* at 599.

The injury in *Hayes* occurred while that claimant was "off-the-clock" and finished working for that employer. If such an injury satisfies the "in the course of" employment prong, then claimant's injury while she was "on-the-clock" and returning to work also satisfies the "in the course of" employment prong.

## THE GOING AND COMING RULE AND THE PARKING LOT RULE EXCEPTION

The "going and coming" rule is simple: an injury while traveling either to or from work is not compensable. 252 Or App at 730 (citing *Krushwitz*, 323 Or at 526). In insurance policy lingo, the "going and coming" rule is an exclusion from coverage. It is a rule that is simple to state but, at times, hard to apply; it is also a rule that is not expressly stated in the Workers' Compensation Law.

An exception to the "going and coming" rule is the "parking lot" exception. Under this "exception," an injury sustained on the employer's premises, say the employer's parking lot, is generally, but not always, compensable. *Id.* (citing *Noble I*, 232 Or at 99). Again returning to insurance policy lingo, the "parking lot" exception is an exception to the exclusion language and, thus, coverage is not precluded. This exception is similar to the "going and coming" rule in that it is simple to state but, at times, hard to apply. That rule is also not contained in the Workers' Compensation Law.

All of this is context for discussing the majority's reliance on both *Noble I* and *Noble II* to conclude that the board erred in failing to apply the "going and coming" rule and, if the rule applies, then determining if the "parking lot" exception applies. The majority opinion states:

> "We perceive no material distinction between the duration of the 15-minute break in *Noble I* and the break in this case, which the board found was '10 or 15 minutes long.'

"We also find no significance to the fact that claimant stayed within 100 feet of her workplace during her break."

252 Or App at 733. In determining whether the "going and coming" rule applies, the majority focuses on whether the employee was subject to the employer's direction and control at the time of the injury. *See J A K Pizza, Inc.-Domino's v. Gibson*, 211 Or App 203, 207, 154 P3d 159 (2007) (holding that, if the claimant chose to follow the employer's instruction on how a personal errand should be accomplished, then the errand was in furtherance of the employer's business).

The claimant in *Noble* decided to walk to a credit union located at a different part of the employer's campus to deposit a personal check during her paid morning break from work. 232 Or App at 95. She left her building, crossed a street, and started to cut across a parking lot when she slipped on ice and fell, fracturing her right ankle. *Id.*; *Noble II*, 250 Or App at 597-98. In *Noble II*, the court explained that the circumstances of the claimant's injury were legally insufficient to support a determination of compensability under the unitary work-connection test because it would be inconsistent with the overarching purpose of the test and the workers' compensation statutes. 250 Or App at 599. To clarify that conclusion, the court posed a hypothetical that it considered to be materially indistinguishable from the facts in *Noble*: An employee, "A," uses her lunch break to drive across town to pay her rent check, parks her car in a different employer-owned parking lot, and is injured when she slips and falls. *Id.* at 600. The court then asked the question:

"Is A's injury compensable in workers' compensation as connected to her work? What meaningful purpose, relating to the fundamental purposes of the workers' compensation statutes, would be served by such a result—as opposed to consigning/permitting A to pursue an action and remedy in tort?"

*Id.*

As noted, the majority concludes that this case is materially indistinguishable from *Noble*. In my view, the material facts in *Noble* are distinguishable from this case and, because this claimant never left work, I disagree with

the majority's conclusions. Here, as required by employer, claimant left the area where she performed her work assignment to take her mandatory and paid work break. Claimant went to the smoking hut—one of the locations where, as noted, employer acquiesced in employees taking their breaks. The smoking hut was a structure about 100 feet from the entrance-to-work door and was in the parking lot. While on break, claimant conversed with her coworkers, "venting about some of the calls," as was their usual practice. At the end of her break, claimant walked back toward the building. She was looking through a window of the building, trying to see the clock in the building, when her shoe caught in a crack of the pavement and she fell.

As the board noted, claimant's activity was different from that of the claimant in *Noble*, who was "coming from work," and the claimant in *Hearthstone Manor v. Stuart*, 192 Or App 153, 155, 84 P2d 208 (2004), who was returning to work:

> "[C]laimant neither planned to leave, nor left, her immediate work location, but rather remained in close proximity (*i.e.*, approximately 100 feet) to her work area during her paid break. Therefore, even though claimant was on a break, as in *Noble* and [*Hearthstone Manor*], this case differs because claimant was not 'going to' or 'coming from' work as contemplated by those cases."

The board concluded that the "going and coming" rule and "parking lot" exception as referenced in *Noble* were not applicable.

I agree with the board that the "going and coming" rule does not apply and conclude that the "personal comfort" doctrine is more helpful to evaluate whether an injury that occurs while a claimant is on a brief break, is not "off-the-clock," and is in close proximity to her working area satisfies the "work-connection" test.[7] When applying the "personal

---

[7] As the board noted, the injury occurred during claimant's scheduled work hours, while she was on a paid break, in a place where she reasonably was expected to be, and on her route of normal ingress to her workplace along the "employer's path" through the parking lot. The majority cites *Noble I*, 232 Or App at 99, and *Hearthstone Manor*, 192 Or App at 158, for the conclusion that, for purposes of the "parking lot" exception, it makes no difference whether the employee was coming or going to work for a break or lunch, or whether the worker was injured during a paid or unpaid break. 252 Or App at 730-31. However, the court in *Noble I*

comfort" doctrine, we distinguish between activities by an employee that are personal in nature, such as getting coffee, and those that are personal to the employee, *e.g.*, buying a birthday card for a grandchild. *Halfman*, 49 Or App at 29. Injuries that occur during an activity that is personal in nature are compensable if that activity bears some relationship to employment and is expressly or impliedly allowed by the employer. *City of Eugene v. McDermed*, 250 Or App 572, 282 P3d 947 (2012) (citing *Hays*, 325 Or at 598-99); *see also Clark*, 288 Or at 266. Injuries that are personal to the employee have nothing to do with employment and, accordingly, are not compensable. *Halfman*, 49 Or App at 29.

Here, unlike the claimant in *Noble*, claimant did not engage in activities that are personal to her. Like the claimants in *Clark* (heating lunch on hot glue press), *Halfman* (looking for a restroom and drink in the neighborhood), *Jordan* (having a coffee break at an off-premises restaurant), and *McDermed* (crossing the street to get coffee), claimant engaged in the typical kind of break activity that was contemplated and acquiesced to by her employer. She briefly conversed with her coworkers in the smoking hut and then returned to her work area.

Consequently, I agree with the board's conclusion on the "in the course of" employment prong:

> "Based on this evidence, we find that claimant's injury occurred within the period of employment (a paid break, during regular work hours), at a place where she reasonably was expected to be (returning from the break shelter, the use of which the employer had acquiesced to, via the normal route), and while she was doing something reasonably incidental to employment (on a paid break and checking the clock to make sure she was on time). Under these circumstances, we find that the 'in the course of' prong of the unitary work connection test is satisfied."

The majority concludes that, based on *Noble I* and *II*, neither the brevity of claimant's break, the fact that it was paid, nor the short distance claimant travelled from her workplace precludes application of the "going and

---

noted that the fact that the injury occurred during a paid break made the work connection stronger than an injury during an unpaid period. 232 Or App at 99-100.

coming" rule. I agree that those are not determinative factors. Another nondeterminative factor is that Enterprise did not own or control the parking lot where the smoking hut was located. Rather, the ownership and control of the smoking hut is just one of the multiple factors that must be considered in making the determination regarding the "in the course of" employment prong. As we said in *Noble II*, each case must be decided on its own particular facts. 250 Or App at 601.

What matters here is that employer required claimant to leave her work area on breaks. Claimant left her work area, went to a recognized break area, and was injured while walking back to her work area. I doubt that there would be any issue in this case if the fall happened while claimant was walking to or from one of the other break areas or walking to or from the bathroom.

The answer to the hypothetical in *Noble II*, based on the facts in this case, is that the law in Oregon requires employers to grant employees work breaks and the purpose of those breaks is to allow employees a break from work—perhaps to use the bathroom, to smoke a cigarette, or to eat potato chips. In this case, Enterprise required employees to leave their work areas on breaks. Also, Enterprise knew that some employees used the smoking area and acquiesced to letting employees use the smoking area. Claimant here did not leave work on a personal task.

## CONCLUSION

The legislature found that enterprises are necessary to the enrichment and economic well-being of all Oregonians, and the legislature realized that inevitably there will be injuries to the workers employed by those enterprises. ORS 656.012(1)(a). The legislature also found that the Workers' Compensation Law was the exclusive system of providing compensation for workplace injuries that bear a sufficient relationship to employment such that employers should incorporate the costs of such injuries into the stream of commerce. ORS 656.012(1)(c). Claimant's left-knee injury occurred while she was taking a paid mandatory work break, and claimant was in a location that Enterprise knew was a place employees went during such work breaks. There is a

sufficient connection between employer's work environment and claimant's knee injury such that the injury should be compensable.

I believe the board got it right. It was not necessary to consider either the "going and coming" rule or the "parking lot exception" because claimant never left work. Therefore, the injury stayed within the time, place, and circumstances of claimant's work, and the injury arose out of and in the course of claimant's work activities.

For the reasons expressed above, I respectfully dissent.

Armstrong and Sercombe, JJ., join in this dissent.